[Civ. No. 501. Third Appellate District.—July 10, 1909.]

ROSIE JAMES, Minor, by Her Guardian ad Litem, Respond-
ent, v. OAKLAND TRACTION COMPANY, a Corpo-
ration, Appellant.

NEGLIGENCE—INJURY TO MINOR HURLED FROM STREET-CAR—UNDUE
SPEED—SUPPORT OF VERDICT—CONFLICTING EVIDENCE.—*Held*, in
this action to recover for injuries to a minor hurled to the ground,
owing to the negligence of the defendant in operating the car with
undue speed, that the evidence for the plaintiff shows no improba-
bility upon its face, and is sufficient to support the verdict for
the plaintiff notwithstanding the conflicting evidence of more
numerous witnesses for the defendant.

ID.—PREPONDERANCE OF PROOF—NUMBER OF WITNESSES—PROVINCE OF
JURY.—The preponderance of the evidence in a civil case is not de-
termined by the number of the witnesses testifying for either party,
but that testimony which produces conviction in the unprejudiced
minds of the jurors represents the preponderance of the proof,
regardless of the number of witnesses from whom it proceeds or of
a greater number to the contrary.

ID.—ASSUMPTION OF TRUTH OF WITNESSES FOR PLAINTIFF.—Where the
evidence for the plaintiff was followed by the jury, the appellate
court must assume the truth of such evidence, and where it shows
such undue speed of the car as caused so serious a jolting and sway-
ing of the car from side to side, and pitching forward thereof,
that it is not a matter of surprise that a passenger standing in
the crowded position which plaintiff was compelled to assume should
be thrown to the ground to her serious injury, the verdict for the
plaintiff must stand.

ID.—ORDER OF PROOF—REBUTTAL—RULINGS NOT PREJUDICIAL.—Where
the court admits relevant and material evidence in rebuttal of the
plaintiff's case, the defendant cannot be prejudiced by the rulings
admitting it in rebuttal, though similar evidence was introduced in
the original case for the plaintiff, either through direct evidence or
on cross-examination.

ID.—INSTRUCTIONS—PROPER REFUSAL OR MODIFICATION OF REQUESTS.—
The court did not err in refusing requests for instructions practi-
cally telling the jury to find for the defendant, or in modifying
requested instructions which as originally proposed did not correctly
state the law.

ID.—STATUTE REGULATING SPEED OF CAR AT TIME OF INJURY—VESTED
RIGHT—BREACH OF CONTRACT—REPEAL NOT RETROACTIVE.—Where
section 501 of the Civil Code, as it stood at the time of the injury,

10 Cal. App.—50

regulated the speed of the car so as not to exceed eight miles per hour, such section as it then stood entered into and became part of the contract between the carrier and passengers, which conferred a vested right to recover for breach of such contract, and the subsequent repeal thereof in 1903 cannot operate retroactively to destroy or affect such vested right.

Id.—Action not Based upon Repealed Statute.—In such case the action is not based upon the repealed statute, but is based upon a breach of the contract of carriage, into which the statute merely enters as a term of such contract.

Id.—Instruction Properly Based upon Statute.—An instruction based upon such statute, that if the car was running at a greater rate of speed than eight miles per hour, and plaintiff was injured without fault on her part, by reason thereof, and if the other elements of actionable negligence concur, such breach of duty will enable the plaintiff to recover, was properly given.

Id.—Limits of Power of Legislature.—The legislature has power to regulate the remedy and to prescribe new rules of evidence if such legislation does not have the effect of creating a new obligation or of attaching a new disability; but the legislature has no power to amend by statute any legal ground on which a previous action is founded, or to create a new law by which such action may be defeated.

Id.—Construction Against Retroactive Legislation—Vested Rights not to be Destroyed.—The rule of code construction is against retroactive legislation, if not expressly so made, and the code provisions manifest the intent not to interfere with vested rights, and recognize those principles which forbid the retroactive operation of statutes, when the effect thereof would be to destroy vested rights.

Id.—Damages not Excessive—Extent of Injuries to Plaintiff.— In view of the very serious extent of the injuries to the plaintiff, owing to defendant's negligence, it is held that not only is the verdict for $15,000 damages not excessive, but, under the circumstances of the case, the verdict of the jury is to be commended as an exemplification of a just judgment.

Id.—Motion for New Trial—Newly Discovered Evidence—Discretion of Court.—The granting or refusing of a motion for a new trial on the ground of newly discovered evidence is committed to the sound legal discretion of the trial court; and where the showing made may well be said to be wanting in every essential prerequisite which would justify an order granting a new trial on that ground, the court properly exercised its discretion in refusing the motion.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Henry A. Melvin, Judge.

The facts are stated in the opinion of the court.

Harmon Bell, for Appellant.

M. C. Chapman, and Reed & Nusbaumer, for Respondent.

HART, J.—This is an action for damages for personal injuries alleged to have been inflicted upon the plaintiff through the negligence of the defendant.

The cause was tried by a jury, and a verdict returned in favor of the plaintiff in the sum of $15,000.

The defendant appeals from the judgment entered in accordance with the terms of said verdict and from the order denying it a new trial.

A reversal of the judgment and the order is insisted upon because the evidence, it is claimed, is insufficient to justify the verdict, and because of alleged erroneous rulings admitting and rejecting certain testimony and for giving and refusing to give certain instructions.

1. The claim as to the insufficiency of the evidence to support the verdict is founded upon the contention that the testimony of the plaintiff and of the other witnesses testifying in her behalf describing the circumstances under which the accident occurred is inherently improbable. It is, therefore, the position of counsel for the appellant that there is not that conflict in the evidence upon the salient points in the case which would preclude, under our constitutional provision confining the appellate jurisdiction of courts of appeal in this state to the consideration of questions of law alone, a review of the evidence and a determination by this court that as a matter of law  the verdict is unwarranted and unjustified under the proofs.

It may be just as well to declare at the outset that we are unable to perceive in the story of the plaintiff and that of her witnesses, detailing the circumstances of the accident, anything which would authorize this court to say that they bear upon their face the earmarks of improbability. Counsel for appellant devotes much space in his briefs to a critical and an analytical discussion of the evidence for the purpose of demonstrating the utter unreliability of the testimony from which the verdict was, manifestly, deduced. Addressed to a jury,

as the sole arbiters of the questions of fact, the argument would be appropriate; but when addressed to a court of review, under our system, it is lost labor. It is true, as appellant declares, that by far the larger number of witnesses testified favorably to its contention or the theory upon which it undertakes to account for the accident: but it is only stating a commonplace to say that the preponderance of evidence in a civil case is not determinable by the number of witnesses introduced to support the affirmative of the issue, and, indeed, our code so expressly provides (Code Civ. Proc., subd. 2, sec. 2061); but, tested by those rules which were established and are approved by long usage as the best and surest means of facilitating such determination, that testimony which produces conviction in the unprejudiced minds of the jurors represents the preponderance of proof, regardless of the number of witnesses from whom it proceeds, whether from one or a hundred.

We shall not undertake to follow counsel in his argument of this feature of the case; nor shall we examine minutely in this opinion the record evidence. It will be sufficient to state in substance the evidence adduced in support of the averments of the complaint and from which the jury, obviously, reached the conclusion represented by their verdict.

The accident occurred in the city of Oakland on the evening of the twenty-sixth day of April, 1900. It appears that on that evening (a number of cars of the defendant having previously been chartered for that purpose) a ''trolley ride'' or an excursion was conducted by the ''Maccabees,'' a fraternal organization. The cars left the Masonic Temple in East Oakland early in the evening, and were so ''crowded'' that all the seats inside and in the open spaces of the cars as well as all available ''standing room'' were occupied. The plaintiff, her mother, a sister and a brother were in one of the cars. The route of the cars was from East Oakland to Alameda and thence to Berkeley, where the plaintiff, her mother, sister and brother changed to another car, which carried them back to Oakland by way of Grove street. The defendant, at the time of the accident, maintained and operated a double track on said street. The car on which the plaintiff was riding was known and numbered as car No. 139, and was traveling south on Grove street, on the west track. When this car

reached Twenty-seventh street, car No. 125, traveling on the east track and going in the opposite direction or northerly, came along, and at this juncture, and as the two cars were passing each other, a crash and the sound of breaking glass was heard. The two cars came to a stop and the respondent, having been by some means thrown from the car on which she was riding, was found lying in the street north of car No. 139. She was unconscious and the flesh was almost entirely torn from one side of her face.

The testimony of all the witnesses for the plaintiff was to the effect that the car on which plaintiff was riding had so many passengers aboard that there was scarcely "standing room" left; that the car, at the time plaintiff fell or was hurled to the ground, was traveling at a high rate of speed, the witnesses for plaintiff estimating the speed of the car variously at the rate of from fifteen to twenty-five miles per hour. The evidence submitted by plaintiff further shows that the car at and near the point at which the accident occurred swayed back and forth from one side of the track to the other, and, as some of the witnesses put it, "bobbed up and down and pitched," very much after the fashion, we infer, of the movements of a bark sailing over a high sea.

The plaintiff's testimony is, in part, as follows: "Coming from Berkeley to the point of the accident I was on the front of the car on the east side. There was no one to the east of me. . . . When I first boarded this car I came on to the rear and went through the car to the door, in the position where I was standing at the time I was pitched from the car. When I went through the car all the seats were occupied excepting the one my mother sat in. . . . I occupied the same position from the time I went outside until the time I was pitched from the car. The window that I had my back against was protected by a few iron rods. I had one of my hands behind me, holding on to the iron bars going across the window. . . . I had hold of the bar from the time we left the power-house until the time I was thrown from the car. . . . The car was going at a swift rate, and was swaying and pitching from side to side, and it appeared to me just when it landed on the east side of the track it was not over to the west side of the track and back again. It was swaying, jolting and jerking, and the general condition as to speed was going

faster, very fast, it appeared to me. . . . I was pitched from
the car by the force of the swaying and rolling. I don't
know what happened. I remember the sensation was just as
if I was going up in a swing. I lost consciousness then. I
can't remember of having been struck by anything.''

The theory of the defense is that the plaintiff was standing
on one of the steps of the car at the moment the accident
occurred and was leaning out from the car, looking back at
a car following the one on which she was riding, and that
her body was struck by the car going north, thus causing
her to be thrown to the ground and thus sustaining the in-
juries she received. There was testimony received on behalf
of the defendant supporting this theory; but the plaintiff
positively denied that she was at any time during the course
of the trip from Berkeley to the point at which she received
her injuries standing on one of the steps of the car or that
she leaned out so that her body could have been struck by
the north-bound car. She declared, as we have seen, that she
remained all the while standing on the front platform of the
car, with her back against the front window on the east side,
holding on with one hand to one of the iron bars crossing
said window. In this, as shown, she was corroborated by a
number of her own witnesses.

The defense also introduced testimony showing that the
track over which the car was passing when the accident hap-
pened was then in excellent condition; that there was no
swaying or pitching or ''jolting'' by the car at that time;
that the car was traveling at a moderate rate of speed—not
over ten miles an hour, some of the witnesses declared. In
short, the important testimony introduced in support of the
allegations of the complaint was flatly contradicted by the
witnesses for the defense.

It is thus readily perceivable that there exists a substantial
conflict in the evidence, and that unless, as contended by the
appellant, it can be said that the testimony presented by
the plaintiff is, upon its face, or in its very nature, im-
probable, there is no room for an interference by this court
with the verdict upon the ground of the insufficiency of
the evidence to justify it. And, as we have declared, it can-
not be said that plaintiff's evidence is inherently improbable.
To the contrary, if the car on which she was riding, and from
which she fell or was thrown to the ground, was traveling

at the rate of twenty or twenty-five miles an hour, and as a
result of the rapidity with which it was going the car swayed
from one side of the track to the other and pitched forward,
etc., in the manner described by plaintiff's witnesses, the
story of the circumstances under which the accident happened
as told by plaintiff and her witnesses is, in our opinion, a
most probable one. Indeed, assuming the plaintiff's testi-
mony to be true, which we are required to do, since the jury
so found, it is only to be wondered that the car did not leave
the track altogether; and it is no matter of surprise that a
passenger standing in the position which plaintiff claimed to
have occupied on the car should have been hurled from the
car under the circumstances disclosed by the evidence she
presented.

2. There is nothing in the claim that the twenty rulings of
the court receiving and rejecting certain evidence are prejudi-
cially erroneous. Most of these rulings were upon objections
that the testimony offered in rebuttal of the defendant's case
was not in fact proper rebuttal, and in a number of in-
stances it is objected that the facts thus sought to be estab-
lished were brought out by plaintiff in her original case. We
have been unable, after a careful examination of the rulings
complained of, to discover any testimony received at the
behest of the plaintiff after the close of the defendant's case
which was not relevant, material and, therefore, proper. For
example, certain witnesses for the defendant testified that the
plaintiff during the course of the "trolley ride" stood upon
one of the steps of the car and engaged herself in stooping
and attempting to catch hold of the grass growing near the
track as the car was in motion; that she was warned that
if she did not get upon the car or go "inside" she might
probably fall from the car. In rebuttal, over the objection
of counsel for the appellant, witnesses were permitted to tes-
tify that she was not at any time occupying a position on one
of the steps, nor was she at any time cautioned against riding
on the step or requested to get on the platform of the car,
nor did she attempt to catch hold of the grass growing along-
side of the track while the car was in motion. This was
clearly relevant testimony, and even if these facts were
brought out in her original case, either through direct or
cross-examination, their admission in rebuttal, while in such
case perhaps unnecessary, could not, obviously, have been

harmful to the defendant. It is so manifest from a mere examination of the alleged errors involved in the rulings of which complaint is made that the defendant could not have been prejudiced thereby, even if it may be conceded that some of the objections might have well been sustained, that we shall not attempt to give them specific or further attention.

3. We find no error in the action of the court in refusing to give, and in giving in a modified form, certain instructions proposed by the defendant. Some of these instructions involved, virtually, a direction to the jury to find for the defendant. The answer to the complaint that the court erred in declining to submit such instructions to the jury may be found in the discussion in this opinion of the proposition that the evidence is insufficient to justify the verdict. The instructions which the court gave at the request of the defendant after altering them in certain particulars did not, as originally proposed, correctly state the law, and their modification was, therefore, proper.

It is, however, contended with vigorous insistence that the court erred in giving the following instruction on the motion of the plaintiff: "I further instruct you that it is the law of this state that the rate of speed of street-cars within the corporate limits of towns and cities of this state must not be greater than eight miles per hour, and if you find from the evidence in this case that the car upon which the plaintiff was riding at the time of the accident to her was running at a greater rate of speed than eight miles per hour at the time she received said injuries and solely by reason thereof and without any fault on her part the plaintiff was injured, then your verdict will be in favor of the plaintiff—for the violation, if any, of any statutory regulation established for the purpose of protecting persons or property from injury is of itself sufficient to prove such a breach of duty as will enable this plaintiff to maintain this action, if the other elements of actionable negligence concur as explained in these instructions. In other words, the violation of a statute of this state regulating the speed of street-cars is such a breach of duty as may be made the foundation of an action by any person belonging to the class intended to be protected by such regulation, provided he is without fault on his part specially injured thereby."

Section 501 of the Civil Code, as it read at the time at which the respondent sustained the injuries complained of here, contained the following provision: "The rate of fare on the cars must not exceed ten cents for one fare, for any distance under three miles. The cars must be of the most approved construction for comfort and convenience of passengers, and provided with brakes to stop the same, when required. *The rate of speed must not be greater than eight miles per hour.* A violation of the provisions of this section subjects the corporation to a fine of one hundred dollars for each offense."

The legislature of 1903 (Stats. 1903, p. 172) amended the foregoing section in several particulars, and, among other amendments of the section thus effected, eliminated the language therein which we have put in italics, so that under the existing general law there is no provision regulating the rate of speed at which cars may travel within the limits of cities.

The contention of the appellant is that the quoted instruction involves an erroneous statement of the law because of the pretermission in the said amendment of section 501 of the Civil Code of the provisions prescribing the maximum rate of speed beyond which cars were not suffered to travel within the limits of cities.

The argument of counsel is that the repealed provision with reference to the rate of speed to which cars were limited in traveling over the streets of cities is merely a rule of evidence, and that, quoting from *Marx* v. *Hanthorn,* 148 U. S. 181, [13 Sup. Ct. 508], "rules of evidence may be changed; they form no part of contracts made while they are in force; as changed they apply to existing causes of action even where retrospective legislation is forbidden"; citing, also, *Coe* v. *Ritter,* 86 Mo. 282; *Chicago, B. & Q. R. Co.* v. *Jones,* 149 Ill. 361, [41 Am. St. Rep. 278, 37 N. E. 247].

We think the criticised instruction states the law upon the subject to which it relates as it existed at the time the accident happened clearly and with accuracy. And we do not assent to the proposition that the repeal by the legislature subsequently to the happening of the accident of that portion of the section regulating the rate of speed of cars within cities had the effect of depriving the plaintiff of any rights vouchsafed to her by the statute at the time her injuries were sustained. The action here is not founded upon the statute. In

other words, there was immediately vested in plaintiff, upon
receiving the injuries of which she complains, the *right* to
institute an action, independently of the statute, to recover
damages for such personal injuries as she might have sus-
tained through the negligence of the defendant. The statute
prescribed the measure of care, in the matter of speed, which
the defendant was required to exercise in the execution of its
contract with her to transport her with safety from one point
to another over its lines. While it may be correct to say that
the breach of the condition thus imposed upon the defendant
by the legislature in the operation of its business as a common
carrier would operate as a rule of evidence, since the viola-
tion of the condition would raise the presumption of neg-
ligence, the condition was nevertheless an element entering
into the contract with plaintiff as important and substantial
as any other essential element involved in the care with which
common carriers are charged by the law in the transportation
of passengers. This condition is not, therefore, as appellant
contends, a mere matter of procedure or a rule of evidence
which, having been abrogated after a right of action had
accrued and before the trial thereof, cannot be invoked or
applied in such action under the rule laid down by the author-
ities cited. In the case of *Jordan* v. *Fay,* 98 Cal. 267, [33
Pac. 96], discussing the effect of the amendment by the legis-
lature of 1889 (Stats. 1889, p. 328) of section 164 of the Civil
Code upon the status of property conveyed to a wife after
marriage, the code providing before the amendment that "all
other property acquired after marriage by either husband or
wife, or both, is community property," the supreme court, in
reply to the contention that the section before its amendment
prescribed only a rule of evidence, says: "But the rule de-
clared by the statute was more than a rule of evidence; it was
a rule of property as well; and we do not think the legislature
intended or had the power to change it so that it would be
retroactive in effect and disturb titles already vested."

In the case here the plaintiff's right of action was a vested
right, founded in the breach of the contract of carriage be-
tween herself and the defendant, one of the substantial ele-
ments of the agreement upon the part of the latter being that,
in order to insure the safe and comfortable carriage of plain-
tiff, the rate of speed of the car on which she took passage,
when passing through the streets of a city, would not exceed

the limit prescribed by the statute.   In other words, the law regulating the business of the transportation of passengers by street railroad corporations subsisting at the time and place of the making of a contract of carriage and where such contract is to be performed, enters into and forms a part of it, as if such law was expressly referred to, or incorporated in its terms.   "This principle," says the supreme court of the United States, in *Von Hoffman* v. *City of Quincy,* 4 Wall. 535, "embraces alike those which affect the validity of the contract, its construction, discharge and enforcement."   (See, also, *Edwards* v. *Kearzey,* 96 U. S. 595; *Wolff* v. *New Orleans,* 103 U. S. 358; *People* v. *Bond,* 10 Cal. 563.)   Clearly, we think, the provision of section 501 of the Civil Code fixing the maximum rate of speed of street-cars when traveling over the streets of a city is more than a rule of evidence—it is a rule of property, for a *vested right* is property whatever may be the nature or condition of the object of such right—that is to say, that "a vested right of action is 'property' in the same sense in which tangible things are property, and is equally protected against arbitrary interference."   (Cooley's Constitutional Limitations, 4th ed., p. 449.)   Of course, a distinction is to be observed between the *right of action* and the *remedy,* for the right to a particular remedy is not a vested right, unless the destruction of the remedy necessarily operates to destroy the right of action, in which case an act abrogating the remedy could not, obviously, have a retroactive effect.

All the judicial law to which our attention has been directed very clearly points out the distinction between those cases in which the repeal involved only some rule of procedure in no way materially affecting contractual rights, or the essential remedy for the enforcement of such rights, and those cases where the repeal or the amendment either necessarily destroyed the only possible remedy by which rights could be restored or wrongs redressed or had the effect of directly impairing the obligations of a contract.   As is said in *Williams* v. *Johnson,* 30 Md. 500, [96 Am. Dec. 616], in passing upon a proposition analogous to the one under discussion here: "It would be extending this opinion to an unnecessary length to review in detail the many authorities relied upon by the counsel for the appellee.   It is sufficient to say that upon examination they will be found to be cases arising upon penal

statutes, where it was held that the action was defeated by the repeal of the law; or where a statute conferring an executory right was repealed before the right became executed; or where it was held that the remedy, procedure and even the statute of limitation, may be changed or modified without impairing the right of action or the obligation of the contract. But no case can be found in which it has been held that a right of action, founded upon the municipal law of a country, is defeated by change or abrogation of the law.

"Apart from this view, it is a sound rule of construction, founded in the wisdom of the common law, that whenever a statute is susceptible, without doing violence to its express terms, of being understood, either prospectively or retrospectively, courts of justice invariably adopted the former construction. A statute ought not to have a retroactive operation, unless its words are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature could not be otherwise satisfied; and especially ought this rule to be adhered to when such a construction would alter the pre-existing situation of parties, or would affect or interfere with their antecedent rights."

As we have declared, and as is plainly obvious, the action here is not one the authority for which is to be found in the section of the code under consideration, for, as seen, the moment the accident occurred and the plaintiff was thereby injured, there vested in her, *eo instanti*, a right of action against the defendant which it was not within the power of the legislature to destroy. Nor is the action upon an executory right yet uncrystallized into an executed one, and neither is the proposition one involving merely the modification or a change in the remedy or procedure. No one will question the right of the legislature to change or modify the remedy and prescribe rules of evidence, if such legislation does not have the effect of creating a new obligation, or of attaching a new disability, retrospectively; but, as is well said in *Hope Mutual Ins. Co. v. Flynn*, 38 Mo. 483, [90 Am. Dec. 440], "it is not within the constitutional competency of the legislature to annul by statute any legal ground on which a previous action is founded, or to create a new bar by which said action may be defeated."

In *Dash v. Van Kleeck*, 7 Johns. 477, [5 Am. Dec. 306], it is said: "The very essence of a new law is a rule for future

cases. The construction here contended for on the part of the defendant would make the statute operate unjustly. It would make it defeat a suit already commenced upon a right already vested. This would be punishing an innocent party with costs, as well as divesting him of a right previously acquired under the existing law. Nothing could be more alarming than such a subversion of principles.'' (See, also, *Bailey* v. *P. W. & B. R. R. Co.,* 4 Harr. (Del.) 389, [44 Am. Dec. 389] ; *Terrill* v. *Rankin,* 2 Bush, 453, [92 Am. Dec. 500] ; *Creighton* v. *Pragg,* 21 Cal. 115; *Pacific Mail S. Co.* v. *Joliffe,* 2 Wall. 450; *Vandekar* v. *Rensselaer etc. Co.,* 13 Barb. 393; *Taylor* v. *Woodward,* 10 Cal. 90.)

But the instruction under review is not alone supported as a correct exposition of the law by the principles established by the foregoing authorities. Our own legislature has expressly prescribed certain rules of interpretation which reflect the general legislative policy of the state upon the question of the effect of legislation repealing or amending statutes upon rights of action which have accrued prior to the enactment of such legislation. Section 3 of the Civil Code provides: ''No part of it [said code] is retroactive, unless expressly so declared.'' Section 8 of the Political Code reads: ''No action or proceeding commenced before this code takes effect, and no right accrued, is affected by its provisions, but the proceedings therein must conform to the requirements of this code as far as applicable.'' Section 6 of the Civil Code contains the following: ''No action or proceeding commenced before this code takes effect, and no right accrued, is affected by its provisions.''

The foregoing code provisions were no doubt enacted for the express purpose of preventing interference with and disturbance of vested rights subsisting prior to and at the time of the adoption of the codes, yet they nevertheless serve to display a legislative recognition of those principles which forbid the retroactive operation of statutes in cases where the effect thereof would be to destroy vested rights.

Counsel for appellant cites many authorities in his voluminous briefs which he contends sustain his position on the proposition we are considering. We shall not review these cases, for it is enough to say that they are not in point here, because they involve actions deriving the authority for their institution and maintenance entirely from the statute itself,

as, for instance, actions for recovery of statutory penalties and the like. As an illustration, however, of the class of cases upon which appellant relies for the support of his contention, we may refer to the case of *Napa State Hospital* v. *Flaherty,* 134 Cal. 315, [66 Pac. 322], where it is said that "it is a rule of almost universal application that when a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession or perfected by a final judgment, the repeal of the statute destroys the remedy unless the repealing statute contains a saving clause." With this declaration we can find no fault, but, as we have already said, the action here is not for the enforcement of or recovery upon a right "created solely by statute and dependent upon the statute alone." It is a right which existed, we may say at the expense of repetition, independently of the statute, which went no further than to prescribe a condition constituting an additional element entering into the *contract* out of which the *right of action* arose.

It will not be questioned, we apprehend, that the principles herein discussed are applicable alike to cases of tort or actions arising *ex delicto* as well as to those sounding in contract. This proposition is so well settled that we shall content ourselves with the mere mention of some of the innumerable authorities establishing and confirming it: *Chalmers* v. *Sheehy,* 132 Cal. 465, [84 Am. St. Rep. 62, 64 Pac. 709] ; *Melvin* v. *State,* 121 Cal. 24-26, [53 Pac. 416] ; *Hunsinger* v. *Hofer,* 110 Ind. 390, [11 N. E. 463] ; *Cook* v. *Cook,* 43 Md. 522; *Miner* v. *Warner,* 2 Grant (Pa.), 448; *Martin* v. *Walker,* 12 Hun (N. Y.), 46; *Weir* v. *Day,* 57 Iowa, 84, [10 N. W. 304].

But appellant objects to the instruction for other reasons than that to which we have perhaps given more extended attention than was necessary; but we think it is not obnoxious to those objections. The instruction declares, to paraphrase it negatively, that, notwithstanding the fact, if it was a fact, that the car on which plaintiff was riding was, at the time, running at a greater rate of speed than eight miles per hour, the plaintiff could not recover unless it was shown that she received her injuries solely by reason of said excessive rate of speed and without any fault on her part. It further declares that the "violation, if any, of any statutory regulation established for the purpose of protecting persons or property from injury is of itself sufficient to prove such a breach of

duty as will enable this plaintiff to maintain this action, *if the other elements of actionable negligence concur* (italics ours), as explained in these instructions." It is hard to conceive of a clearer and more accurate statement of the rule applicable to the circumstances of this case. That the breach of such a statutory regulation constitutes negligence *per se* is well settled, and where, in such case, the evidence introduced does not show that the plaintiff's own acts or conduct contributed proximately to the injury sustained, the proof of such breach is manifestly sufficient to support a verdict. (See *Breesee* v. *Los Angeles Traction Co.,* 149 Cal. 139, [85 Pac. 152].)

4. Appellant complains of the verdict, declaring the damages thereby awarded to be so excessive as to compel the conclusion by this court that they were given under the influence of passion or prejudice. (Code Civ. Proc., sec. 657.) There is nothing appearing from the evidence indicating that the damages given were the result of passion or prejudice upon the part of the jurors returning the verdict, and in the absence of any such showing upon the face of the record we cannot say that, as a matter of law, they are excessive, simply because the amount may be larger than is ordinarily allowed in such cases. The judge who presided over the trial of the cause, and who had equal opportunity with the jury to hear the testimony as it came directly from the lips of the witnesses and of observing the manner in which the latter testified, approved the verdict, and certainly he was in a much better position than this court to say whether the verdict was or could have been inspired by or tainted with passion or prejudice.

The rule as to the admeasurement of unliquidated damages in actions for personal torts, as enunciated in *Aldrich* v. *Palmer,* 24 Cal. 516, has been uniformly followed in California. There it is said: "In actions for personal torts the law does not attempt to fix any precise rules for the measurement of damages, but, from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury. . . . The leading object of such actions is to obtain reasonable and just compensation for the injury sustained, comprehending both the present and the future." (See *Clare* v. *Sacramento Elec. etc. Co.,* 122 Cal. 506, [55 Pac. 326] ; *Walker* v. *Erie Ry. Co.,* 63 Barb. 260-267; *Morgan* v. *South-*

*ern Pacific Co.,* 95 Cal. 508, [30 Pac. 601] ; *Sherwood* v. *Kyle,*
125 Cal. 654, [58 Pac. 270] ; *Lee* v. *Southern Pacific Co.,* 101
Cal. 118, [35 Pac. 572] ; *Lanigan* v. *Neely,* 4 Cal. App. 760,
[89 Pac. 441] ; *Marshall* v. *Taylor,* 98 Cal. 55-63, [35 Am. St.
Rep. 144, 32 Pac. 867] ; *Howland* v. *Oakland C. St. Ry. Co.,*
110 Cal. 513, [42 Pac. 983].)   The court before which an ac-
tion for a personal tort is tried should not substitute its judg-
ment for that of the jury, nor should a new trial be granted
merely because the judge deems the verdict excessive, unless
it is so excessive as to indicate that it proceeded from passion
or prejudice.   (*Sherwood* v. *Kyle,* 125 Cal. 654, [58 Pac.
270].)   And much less is a reviewing court justified in set-
ting aside a verdict because of the alleged excessiveness of
the damages awarded.   The injuries inflicted upon the plain-
tiff through the accident were, in their nature and effect,
but a little short of fatal, according to Dr. Porter, the physi-
cian who attended her.   His description of her wounds is as
follows: ''Her face was torn into ribbons by coming in con-
tact with something, and the only part about the face that
you could recognize as a face at the time was one eye show-
ing and the teeth.   The rest of it was torn into shreds. . . .
Two of the tendons of the right wrist were cut out and the
artery so that a good deal of the hemorrhage was due to bleed-
ing. . . . The right cheek was badly lacerated and the tissues
about the face torn into ribbons; the left wing of the nose
incised or split right through to the bone beneath, and the
upper lip I got in her throat.   Then there was an area of
about two inches by three on the right side that was entirely
lost, from which the tissues and flesh of the cheek were gone.
Then there was a fracture of the orbital plate of the frontal
bone, that is over the ridge of the eye.   That bone was frac-
tured.   And there were several 'horseshoe' flaps—that is,
the skin was cut through and down over the face, and she had
comminuted fracture of the ankle of the right leg; the ankle
bone was broken on the outside.   A comminuted fracture is
one which has several fragments, broken into several pieces—
a simple fracture is just a simple break.''   The doctor fur-
ther testified that the face and nose of the plaintiff were
noticeably disfigured and that such disfigurement would be
permanent.

The plaintiff testified that, even up to the time of the trial
of this cause—over three years after her injuries were re-

ceived—her right ankle, which sustained a comminuted fracture, as the doctor explained, was still weak, and that at times she experienced some difficulty in walking.

The condition, as thus described, in which the plaintiff has been left by reason of the severe injuries she received as a result of the accident furnishes ample proof, so far as this court is concerned, of the soundness and fairness of the judgment of the jury in finding that the sum of $15,000 represents a just and reasonable compensation for the great and irreparable loss which the plaintiff has suffered through the culpable negligence of the defendant. She was only thirteen years of age and in robust health at the time of the accident. The injuries inflicted upon her have permanently disfigured her face and otherwise crippled her, so that she is seriously handicapped in the waging of life's battles, if circumstances should require her to do so upon her own responsibility, as well, perhaps, in greatly impeding her in the accomplishment in full measure of many of the laudable purposes peculiar to her sex. Under the circumstances of this case we commend the verdict of the jury as an exemplification of the exercise of a just judgment.

5. One of the grounds upon which the motion for a new trial was made was that of newly discovered evidence, which the defendant asserts that it could not, with the exercise of reasonable diligence, have discovered and produced at the trial.

The alleged newly discovered evidence is set out in the affidavits of John Ferrin, Sallie B. Hughes and Harry R. Meade. Ferrin was the claims agent of the defendant, and in his affidavit declares that it was his duty to look up evidence for the defendant, and that he learned and knew nothing of the testimony that Mrs. Hughes and Meade would give until during the progress of the trial; that, for the first time during the trial, he also learned that one Mrs. O. P. Hamlin, a resident of Oakland, would testify that she was on the car from which plaintiff claimed to have been hurled when the accident happened, and that said car was neither traveling at an unusual rate of speed nor "swaying and rocking," as described by plaintiff's witnesses.

Mrs. Hughes deposed that she would testify that on the morning after the plaintiff was injured she called at the resi-

10 Cal. App.—51

dence of Mrs. James, mother of plaintiff, and made inquiry concerning the condition of the plaintiff, and how the accident happened; that Mrs. James told affiant that the accident was "through Rosie's disobedience; that she—Mrs. James—had told Rosie to keep still and not be carrying on, that something would happen," etc., and that at about that time plaintiff either fell or was pitched from the car.

Meade declared that he would testify that he was riding in a car a short distance behind the car on which plaintiff was riding at the time of the accident, and that a few minutes prior to the accident he "noticed a lady who was standing on the step on the left-hand side of the front open section of the car upon which Miss Rosie James was riding, was holding on to one of the stanchions and leaning out from the car at arm's-length."

A number of witnesses, testifying for the defense, stated that the car was not traveling at more than an ordinary rate of speed when the accident occurred, and that the car did not pitch and sway and rock as described by plaintiff's witnesses. It will thus be seen that the testimony of Meade and Mrs. Hamlin would have been only cumulative of a large amount of testimony to the same point. Besides Mrs. Hamlin, it was shown, resided in Oakland at the time the trial was going on, and it would seem that her testimony could have been secured before the close of defendant's case by the exercise of the most ordinary diligence.

Mrs. Hughes' testimony could be offered, manifestly, only for the purpose of impeaching Mrs. James, while Meade does not pretend to say that the "lady he noticed standing on one of the steps of the car holding on to one of the stanchions and leaning out from the car at arm's-length" was the plaintiff. Besides, Margaret James, a sister of plaintiff, testified that she was "on the only step there was on the front platform on the east side of the car," and that she occupied "that position all the way from Berkeley."

There is no rule better understood or more impregnably settled in this state than that the granting or refusing a motion for a new trial on the ground of newly discovered evidence is a question committed to the sound legal discretion of the trial court, and that before an interference with the exercise of such discretion by an appellate court can be justified, there must appear from the record a plain and palpable

abuse thereof.   And where it appears that the diligence required by the statute for the procurement of the alleged newly discovered evidence before the beginning of the trial has not been exercised, or that the evidence is merely cumulative, or the only office of such evidence is to impeach an adverse witness, then it is clear that the ruling of the court on the motion based upon purported newly discovered evidence cannot be disturbed.   (1 Spelling on New Trial and Appellate Practice, sec. 206; Hayne on New Trial and Appeal, sec. 88; *People* v. *Demasters,* 109 Cal. 608, [42 Pac. 236] ; *Sonoma County* v. *Stofen,* 125 Cal. 32, [57 Pac. 681]; *Harralson* v. *Barrett,* 99 Cal. 607, [34 Pac. 342] ; *People* v. *Loui Tung,* 90 Cal. 377, [27 Pac. 295] ; *McCormick* v. *Central R. R. Co.,* 75 Cal. 506, [17 Pac. 542] ; *Stoakes* v. *Monroe,* 36 Cal.,388; *People* v. *Warren,* 130 Cal. 683, [63 Pac. 86]; *Chalmers* v. *Sheehy,* 132 Cal. 459, [84 Am. St. Rep. 62, 64 Pac. 709].) .

The showing here for a new trial on the ground of newly discovered evidence may well be said to be wanting in every one of the essential requisites which alone justify an order granting a new trial upon such ground.

Our conclusion is, as is obvious from the foregoing views, that the verdict is sufficiently supported by the evidence, that the law was fully, fairly and correctly declared to the jury, that those rulings upon the evidence which, strictly speaking, may be erroneous, are without prejudice, and that the amount of damages awarded is not excessive, but reasonable and just.

The judgment and order appealed from are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1909.