CANNON'S ADM'R v. VAUGHAN.

See this case as to construction of statutes.

The conditions of residence, &c., for three years, and restraint of alienation before the issue of the unconditional certificate, attached, under the Act of January 4th, 1839, to conditional certificates issued to single men, as well as to those issued to heads of families under that Act.

Appeal from Anderson.

*Donley & Anderson*, for appellant. We have no doubt that appellee will contend that this cause is settled by the decision of Turner v. Hart, 10 Tex. R. 438. But, upon an examination of the Act of January 4th, 1839, (Hart. Dig. Art. 1924,) we submit that this case is entirely different, and that there was no restriction, either by proviso or otherwise, of an alienation of conditional certificates, by single men, and that the proviso, in regard to heads of families, does not extend to single men, or certificates of 320 acres.

We submit that if there was intended by the framers of this statute, a proviso in regard to single men, that proviso should have been clearly and fully expressed. " The office of a pro- " viso is either to except something from the enacting clause " or to qualify or restrain its generality or to exclude some " possible ground of misinterpretation." (Minis v. United States, 15 Peters, U. S. R. 445.) The object of the proviso

in the above Act, it is submitted, was intended and can only be construed to restrain that portion of the statute giving lands to heads of families.

*G. F. Moore*, for appellee.

HEMPHILL, CH. J. This is a suit brought by appellee to recover a tract of land, the headright of one Jackson B. Nash, who, as a single man, obtained a conditional certificate for three hundred and twenty acres, from the Board of Land Commissioners of Houston County, on the 24th December, 1839, under the Act of the 4th of January, 1839, which was, on the 8th day of March, 1840, located on the land in controversy. On the second of December, 1850, the unconditional certificate was issued to said Nash by the Board of Land Commissioners of Anderson County, and on the first of July, 1851, the land was patented to the said Nash. Both of the parties litigant claimed under Nash; the appellant, under deed executed to his intestate before the issuance of the unconditional certificate, viz: on the 2nd July, 1842, and the appellee under conveyance executed from Nash to himself on the 3rd July, 1852, having no knowledge of the adverse claim, except by construction of law from the record of the deed to Cannon.

Neither party having been in possession, the cause was tried upon the legal force of the two titles, without any equities being claimed in support of the first title.

The judgment was for the appellee, or, in other words, against the validity of the title claimed by the appellant under the conveyance executed before the unconditional certificate had issued, and this judgment is objected to on the ground that as Nash was a single man, there was no restriction imposed by the Act of 1839 or any other law, upon the sale of his conditional certificate, and that consequently a title under such sale is valid and binding. To understand the ground assumed by appellant, it will be necessary to recapitulate the

substance of the first Section of the Act of the 4th of January, 1839, under which this certificate issued and which is to the effect, that every person emigrating to the Republic between the first of October, 1837, and of January, 1840, who is the head of a family and who actually resides within the government with his or her family, shall be entitled to a conditional grant of six hundred and forty acres of land. The conditions of the grant being, that both grantee and his or her family shall reside permanently within the Republic, and perform all duties required of other citizens, for the term of three years, after which time he shall receive an unconditional deed for said grant of land. Provided that no sale of said claim to land, shall be valid in law and binding upon the person selling the same, until an unconditional deed shall be obtained by the grantee, for the said land ; and in no case whatever shall a grant of that description be made, unless on satisfactory proof that all the provisions and conditions of the law have been complied with, and that all single male persons of the age of seventeen and upwards, who shall have emigrated, or may emigrate to the Republic during the same period, shall be entitled to three hundred and twenty acres of land.

It will be perceived that the conditions and restrictions imposed upon the grants to heads of families, are not in terms repeated or applied in reference to grants to single persons, and the appellant contends that inasmuch as the intention to impose such restrictions on grants to single persons was not plainly expressed or reiterated, such grants should not be held as obnoxious to the proviso under which restraints were imposed upon the alienation of grants made to heads of families.

Now, although the meaning of the Legislature might have been more transparent, if, instead of affecting such extreme brevity of expression, there had been added to the grants for single men that they " should be on the conditions above named," as was the expression in the latter clause of the 29th Section of the Land Law of 1837, yet, without such addition, there seems no plausible ground for doubt as to the true mean-

ing and intention of the law. It does not require any severe scrutiny to ascertain that the object of the latter clause of the Section is to provide that single men shall likewise receive a donation, not on different conditions, but for a less quantity than the grant to heads of families. To hold otherwise would be repugnant, as will be seen, to all those safe and sound rules of construction, by which, in cases of doubt, the intention of the law giver is to be ascertained. Among the most important of these rules are the maxims that the intention of the Legislature is to be deduced from the whole and every part of a statute, when considered and compared together; that the real intention, when ascertained, will prevail over the literal import of the terms; and that the reason and intent of the legislator will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction and absurdity; that when the words are not explicit, the intention is to be collected from the occasion and necessity of the law, and from the mischief and objects and remedy in view; and the intention is to be presumed according to what is consonant to reason and good discretion. It is another established rule that all acts in *pari materia* are to be taken together, as if they were one law, and that if it can be gathered from a subsequent statute, in *pari materia*, what meaning the Legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute. (1 Kent, 461-2-3; 3 Howard, U. S. R. 564-5, and authorities cited.)

These and other rules by which the sages of the law have been guided in seeking for the intention of the law giver, have been accumulated by the experience, and ratified by the approbation of ages.

If, under the influence of these maxims, we attempt to ascertain the intention of the statute, we shall find that the mischief to be provided for was that the existing laws on the subject of donations of land to emigrants, did not extend beyond the first of October, 1837; that it was the object of the Act

of 1839 to continue these donations, though in diminished amount, to the first of January, 1840; that the emigrants arriving during the interval, were to be virtually divided into two classes, as they had been in previous laws on the subject of colonization, viz: heads of families and single men; that the former was to be (as it had been under previous laws) the favored class, receiving an amount double to that assigned to the latter, but even upon this favored class there were imposed the onerous conditions of residence, actual and permanent with their families, in the Republic, for the space of three years and of non-alienation of their claims to lands until an unconditional deed was obtained. Having seen, then, that the sole object of the first Section of the Act of 1839 was to invite emigrants, but with the condition (expressed in so many terms in relation to heads of families) that they should become permanent settlers for at least three years, and as a security that this would be done, they were disabled from selling their lands until they received a grant from the Government showing that such condition had been performed, can it, upon consideration and comparison of the whole provision, be seriously assumed that the intention of the law was to impose upon the more favored class (who, having removed with their families, would most probably, in any event, become permanent settlers) the condition of actual residence and the incapacity of alienation, while to each transient single man who might chance to wander into the country, there would be given three hundred and twenty acres of land, without any condition of residence, non-alienation or other restriction? For such is the extent of the construction contended for by appellant. Single men are either subject to all the conditions imposed on heads of families, or they are subject to none.

Certainly such construction, so manifestly repugnant to the whole spirit, object and policy of the law, is wholly inadmissible, although such might be the meaning of an isolated sentence, detatched from the context and construed without reference to other portions of the statute or its object and de-

sign. Such construction would lead to palpable injustice, absurdity and contradiction, and would be consonant with neither reason nor sound discretion, and in fact, it could not be tolerated unless the Legislature had plainly and positively expressed its will to that effect, or the implication from the terms used would be too strong to be resisted. But, if there could be any doubt as to whether the conditions appended to grants for heads of families under the Act. were not also attached to grants in favor of single men, this would be removed under the implied construction given to the Act by Congress, in the statute of the 15th of January, 1841. (Art. Dig. 2051.) Under this statute, in order to obtain an unconditional certificate single as well as married men were required to swear that they had been actual citizens of the country, and performed their duties as such for the space of three years, thus showing that in the opinion of the Legislature, the grants to single and to married men were alike equally burthened with conditions.

Another and forcible reason against the construction urged by appellant is its repugnancy to the cotemporaneous exposition of the Act, and to its uniform interpretation and acceptation by Boards of Land Commissioners, and in fact by all officers employed in the administration or exposition of the laws in relation to the public domain. But it would be of no advantage to prolong this discussion, or to show reasons for giving the meaning to an Act which is the only one consonant with its spirit and its terms, when fairly construed, and about which there could be raised no doubt, unless under the influence of hypercriticism or anxiety to evade the consequences of one's own folly. As before stated, there are no equities set up or claimed for the appellant. He relies alone upon the supposed legal capacity of Nash to make sale of the conditional certificate, and binding effect of the sale, upon the said Nash. On this, as we have seen, he must fail, and the judgment must consequently be affirmed.

Judgment affirmed.