## SPARKS v. KAUFMAN COUNTY.
### (No. 7673.)

(Court of Civil Appeals of Texas. Dallas. March 24, 1917. Rehearing Denied April 28, 1917.)

1. COUNTIES &#9758;74(2) — CLERKS — COMPENSATION—POPULATION OF COUNTY—DETERMINATION.

Acts Sp. Sess. 25th Leg. c. 5, § 10, as amended by chapter 15, § 1, provides that the maximum of fees of office that could be retained by county clerks is an amount not in excess of $2,000 per annum, plus one-fourth of the excess above such amount, provided that up to 1902 in counties in which there were cast at the last presidential election as many as 5,000 votes and thereafter in counties shown by congressional census of 1900 to contain as many as 25,000 inhabitants such clerk should receive not exceeding $2,250, plus one-fourth of the excess fees above the said amount. Section 17 of said act provides that the officers named in section 10 in those counties having a population of 15,000 or less shall not be required as provided in section 11 to keep a statement provided for in section 16 of this act, the population of the county to be determined by the vote cast at the next preceding presidential election on the basis of 5 inhabitants for each vote cast at such election. *Held* that, as applied to the county clerk in a county containing over 25,000 inhabitants according to census, but casting less than 3,000 votes at the last presidential election, the method of computing the population provided in section 17 must give way to the provisions of section 10.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 105.]

2. STATUTES &#9758;181(1)—CONSTRUCTION—LEGISLATIVE INTENT.

Under the direct provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 5502, the Legis-lature's intent must be kept in view in construing statutes.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 259.]

3. COUNTIES &#9758;114—CLERKS—SUPPLIES.

A county clerk has no authority to acquire new typewriters, by purchase or exchange, or expend money for postage stamps, although such supplies are necessary in conducting his office.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174, 175.]

4. COUNTIES &#9758;113(1)—COUNTY COMMISSIONERS—EXCHANGE OR PURCHASE OF TYPEWRITERS.

The authority to acquire new typewriters by purchase or exchange for the county clerk's office is vested, if in any one, in the commissioners' court under Vernon's Sayles' Ann. Civ. St. 1914, art. 2256, authorizing them to contract for stationery.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174, 176.]

5. COUNTIES &#9758;124(1)—LIABILITY FOR PROPERTY USED.

A county is not liable on equitable principles for new typewriters and postage stamps used by a county clerk in conducting his office, where the commissioners' court did not authorize nor consent to the supplies being acquired.

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by Henry Sparks against Kaufman County consolidated with an action by Kaufman County against Henry Sparks and others. From an affirmative judgment for Kaufman County, Henry Sparks appeals. Affirmed.

Lee R. Stroud and Wynne & Wynne, all of Kaufman, for appellant. G. O. Crisp, of Kaufman, and Bond & Bond, of Terrell, for appellee.

RASBURY, J. Appellant sued appellee for certain excess fees paid appellee by appellant while county clerk of Kaufman county, under the belief that such excess fees belonged to the county, but which under the provisions of law it was alleged belonged to appellant; also for certain other special items which will be detailed at another point in this opinion. Another suit by appellee against appellant to recover from appellant certain excess fees withheld by appellant then pending was consolidated with the instant case, and both proceeded to trial simultaneously. There was trial before the court, who rendered judgment against appellant on his claim. Judgment was rendered for appellee on its claim against appellant for certain sums of money, aggregating $4,702.16, found to be due by appellant as excess fees, after allowing him credit for all fees actually paid into the county treasury and those due him and not so paid in. From such judgment this appeal is taken.

The court filed conclusions of fact, those essential being in substance these: Appellant was elected county clerk of Kaufman county in November, 1910, qualifying and assuming the office November 9, 1910, serv-

ing therein until November 12, 1912, at which time, he having been re-elected, he again qualified and assume the office, and served therein until November 10, 1914. Appellant for the first three fiscal years in office paid into the county treasury certain excess fees collected by him aggregating $1,780.30, being the fees sued for by him, and refused to pay any such fees for the fourth year. The excess fees sued for by him and actually paid into the treasury were not all the excess fees by him collected. Allowing appellant all fees to which he was entitled and crediting him with all fees paid into the county treasury, he was due appellee at trial $4,702.16. The approximate total of all excess fees collected by appellant was $6,482.46. As shown by the United States census of 1900, Kaufman county in the year 1910 had a population of 33,373 inhabitants. As shown by the same census for 1910, Kaufman county for the years 1911, 1912, 1913, and 1914 had a population of 35,322 inhabitants. At no presidential election next preceding either term of office so held by appellant did the vote cast thereat equal 3,000 votes. There are certain other facts found by the court which will be stated in connection with the issues they support.

The court found as matter of law that appellant was not entitled to recover the fees paid in by him, and that appellee was entitled to recover those not paid in by appellant for the reason that Kaufman county came within the provisions of the law limiting the fees of certain county officers, including county clerk, and that after allowing appellant his limit, to wit, $2,250, plus one-fourth of all fees in excess of that amount, he was due appellee the amount for which judgment was rendered.

[1, 2] The effect of the first assignment of error is to challenge the construction placed by the trial court upon the several statutory provisions popularly known as the "maximum fee bill." As argued by appellant, it is well known that the purpose of the law is to fix a maximum of compensation for certain officers in some of the counties in the state, and, for reasons not necessary to recite, to exempt those in certain sparsely inhabited counties from the provisions of the law. For the purpose of better understanding the issue presented we recite those provisions of the law applicable thereto in force during the period the items accrued. There have been some recent changes in the law not necessary to detail. The original act was passed in 1897. Gen. Laws, Sp. Sess. 25th Leg. c. 5, § 10, as amended by chapter 15, p. 42; 10 Laws Texas, 1482; Batts' Civ. Stats. art. 2495c. As amended, the act provided that the maximum of fees of office that could be retained by county clerks and others enumerated was an amount not in excess of $2,000 per annum, plus one-fourth of the excess above said amount, provided that "up to 1902, in counties in which there were cast at the last presidential election as many as 5,000 votes, and thereafter any counties shown by the national census of 1900 to contain as many as 25,000 [inhabitants]," such clerk and the others enumerated should receive not exceeding $2,250, plus one-fourth of the excess fees above said amount. By the act county clerks and others were required to make annually to the district court under oath a complete statement showing the fees collected and not collected, etc., by him, the deputies and assistants employed, together with the amounts paid them, any excess fees shown to have been collected to be paid into the county treasury, such reports to be submitted to the grand jury, etc. Sections 11 and 16. By the act it is also provided that county clerks and others named in section 10, in counties containing a population of 15,000 or less, based upon 5 inhabitants for each vote cast, shall not be required to make the report just mentioned. Section 17. The only change in the law applicable to the particular facts of the present case appears in article 3882, R. S. 1911, effective September 1st the same year, where it is declared that among others county clerks, in those counties shown by the national census to contain as many as 25,000 inhabitants, shall receive not exceeding $2,250 per annum, plus one-fourth of all fees in excess of said amount. As we have shown in our statement of the essential facts, the trial judge found that Kaufman county during the time appellant was in office contained by the national census, more than 25,000 inhabitants. He further found, as we have also shown, that at no presidential election during the time appellant held office did the votes cast thereat equal 3,000. As a consequence, based upon the last finding of fact, Kaufman county during appellant's incumbency in office had a population of less than 15,000, which exempted him from making the report required by sections 11 and 16 of the act. Counsel for appellant argues that, being exempt by the basis fixed by section 17 from making report of excess fees, he may, notwithstanding other provisions, retain such excess. The question depends upon the construction to be placed upon section 10 of the original act as amended and section 17. Section 10, it occurs to us, is easily understood. It first declares that county clerks and others shall receive as compensation $2,000 annually, plus one-fourth of all fees in excess of said amount and no more. By section 11 it is provided, in substance, among other things, that in the event the fees collected by such officer is less than his maximum compensation or insufficient to pay his deputies and assistants, the state shall not be responsible for such deficit, from which it is apparent that it was the purpose of the Legislature to allow such officer $2,000 and one-fourth of the fees in excess of that amount, in any event if the income from the office was sufficient. Section 10 next declares that such officer

may have $2,250, plus one-fourth of the fees in excess of that sum, if the population of the county is as much as 25,000. From such declaration it is deducible that the Legislature was of opinion that a county of 25,000 population would return revenue in excess of the maximum compensation of $2,000. As we have said, the act was passed in 1897, and for the purpose of determining the population, and the consequent right to the greater compensation, it was further declared that until 1902, in any county casting as many as 5,000 votes at the last presidential election the larger compensation should be paid; and after said year (1902) in any county shown by the national census of 1900 to have 25.000 inhabitants the larger compensation should be paid. That it was the intention of the Legislature that no more than the amounts specified should be paid is made further manifest by section 11, requiring such officer to make sworn reports of all fees collected by him to the district court and to pay into the county treasury any excess, and by section 16, requiring the district judge to refer such reports to the grand jury for examination and report. By the facts in the present case it appears that appellant has retained in excess of his maximum compensation of $2,250, plus one-fourth of the excess, $4,702.16. The issue then narrows to the proposition whether appellant may, despite the plain provisions of section 10, definitely fixing his maximum compensation, retain that sum, under the provisions of section 17. Section 17 does not in any respect qualify the provisions of section 10. It deals, not with the compensation to be received by the officers named nor how it is to be ascertained, but with an entirely different subject. But it must be confessed that it does deal with the same subject as section 11, since by that section every officer named in section 10 must make a report, while by section 17 such officers in counties having less than 15,000 inhabitants are not required to make such report.

Considered, then, together, the effect of sections 11 and 17 is that all officers named in section 10 shall make the reports required by section 11, save in counties containing less than 15,000 inhabitants. But the difficulty lies in the further provision of section 17 declaring that the population of the counties to be exempted shall be determined by multiplying the presidential vote by 5. Such computation would, under the facts in this case, exempt appellant from reporting excess fees, and by inference, as argued by counsel for appellant, permit him to retain such excess. On the other hand, it is declared by section 10 that appellant is not entitled to the excess if the county contains 25,000 inhabitants based upon the national census. So computed, the county did contain 25,000 inhabitants during appellant's incumbency in office, and from which the inference is to be drawn, as argued by opposing counsel,

that appellant was bound to report and account for the excess and could not retain it. The illogical result arising from the dissimilar method of computing the population is apparent. Such being the case, the controlling and fundamental rule is to ascertain and give effect to the legislative intent. The rule with us is statutory, and declares that courts in construing statutes "shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Article 5502, Vernon's Sayles' Civ. Stats. Such intention, when ascertained, will control over the strict letter of the law, when the latter "would lead to palpable injustice, contradiction and absurdity." Cannon v. Vaughan, 12 Tex. 399. "For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent." Russell v. Farquhar, 55 Tex. 355; Edwards v. Morton, 92 Tex. 152, 46 S. W. 792. The preamble to the act under consideration recites its purpose, among other things, to be "to limit and regulate the compensation of the clerk of the county court, * * * and to prescribe penalties for the violation of" the act. Section 10 of the act unequivocally declares that such officers as are named therein shall receive no more than the amounts enumerated according to the county's population based on the national census. Section 11 declares they shall report and account for all excess by paying same into the county treasury. Section 14 declares that failure to make the report shall constitute a misdemeanor punishable by fine of not less than $25 nor more than $500. Thus viewed from every single section of the act, save section 17, it is undeniably true that the intention of the Legislature was to allow the officers named the compensation outlined in section 10, ascertained in the manner therein prescribed. No other conclusion could be justified by the plain meaning of the language used. While it is true that the language used in section 17 is equally plain, it is so inconsistent with those material parts of the law dealing with the real object in hand that its literal construction and application would lead to the very absurdities and contradictions and consequent injustices that all authority asserts should be avoided. It is not conceivable that the Legislature intended, in exempting the officers in counties containing less than 15,000 inhabitants from making the reports required of all officers named in section 10, to adopt a basis of computing population, the effect of which would be to pervert and render nugatory the carefully arranged and considered provisions of the law in reference to the maximum of compensation. We conclude such was not their intention, and that the method of computing the population provided in section 17 must give way to those provisions of section 10 on the same subject,

[3-5] Appellant also sought to recover of appellee $105, the value of a typewriter. The court refused recovery, and his action is assigned as error. The facts concerning the item are that appellee owned a typewriter, which appellant, while county clerk, without the knowledge or consent of the county commissioners, traded, together with one owned by him personally, for two new machines, agreeing to pay the difference. The county commissioners refused to pay the difference, whereupon the Underwood Typewriter Company, with whom the trade was made, took possession of the two new machines. Appellant seeks to recover the value of one of the old machines traded for the two' new ones. The court found that the typewriter was necessary for running the office. Appellant urges that, since the typewriter was necessary to the conduct of the office, and was actually used by appellant in the performance of his duties, appellee received the benefits derived therefrom, and is hence liable therefor. We conclude that the county was not liable for this item. Appellant was without authority in law to make the exchange or to purchase a new machine. Such authority is reposed in the county commissioners, if in any one. Article 2256 et seq., Vernon's Sayles' Civ. Stats. The facts further show that the commissioners' court not only did not authorize the exchange and purchase, but that it was without its consent. Therefore it cannot be said that the county acquiesced in the transaction and accepted its benefits so as to make the county on equitable ground liable therefor.

Appellant also complains of the refusal of the court to allow him $500 expended for postage stamps. The court found that the stamps were furnished and used and were necessary in the conduct of the office, but were purchased without the consent of the commissioners' court. For the same reasons that we hold the court's action in reference to the typewriter to be correct do we hold also correct his action in reference to furnishing stamps. Further, we do not anywhere find in the law authority for commissioners' courts to allow such an item.

For the reasons stated in this opinion, we conclude it is our duty to affirm the action of the trial court. It is accordingly so directed.

Affirmed.