## EX PARTE A. D. LIPSCOMB.

### No. 3630.   Decided April 12, 1922.

### (239 S. W., 1101.)

**1.—Witness—Privileged Communication.**

The law of privileged communications between lawyer and client is, that the privilege is that of the client. He alone is the one for whose protection the rule is enforced. A refusal by the court to sustain objection by the lawyer is not a denial of his privilege or immunity, nor erroneous as to him, though it might be as to the client. (P. 415).

**2.—Same—Commitment for Contempt.**

The trial court, in ruling on objections to the testimony of a lawyer as to matters claimed to be confidential communications between him and his client, a party to the suit, was acting within its province, and whether or not the ruling was erroneous could in no event affect the validity of the order committing the witness for contempt in refusing to answer. (P. 415).

**3.—Habeas Corpus—Commitment for Contempt—Erroneous Ruling.**

The writ of *habeas corpus* cannot be used as a method of appeal, or for the correction of errors in the admission or exclusion of testimony. The

inquiry therein is limited to the question of jurisdiction. Ex parte Smith, 110 Texas, 55, followed. (Pp. 415, 416).

4.—Same—Jurisdiction—Supreme Court.

The power of the Supreme Court to grant the writ of *habeas corpus* conferred by article 1529, Revised Statutes, is not intended to conflict with or supplant the remedy by revision on appeal and is to be construed in connection with the statutes relating to appellate jurisdiction. The Supreme Court does not have jurisdiction to correct errors of the trial courts except by writ of error to the Courts of Civil Appeals. It can discharge on *habeas corpus* one wrongfully committed for contempt when the order is void for want of jurisdiction, but not when it is merely erroneous. (Pp. 417, 418).

5.—Same.

It is immaterial that the witness himself had no right of appeal. His privilege to refuse to answer is not regarded by the law. It was his duty to abide by the ruling and answer the questions. As to the rights of his client, he being a party had a remedy for erroneous rulings by appeal. (P. 418).

Original application by Lipscomb to the Supreme Court for writ of habeas corpus against T. H. Garner, the sheriff of Jefferson County, by whom he was held in custody under a commitment for contempt by the District Court.

*H. M. Whitaker, E. E. Asterling,* and *George C. O'Brien,* for relator.

The rule of the Common Law, as well as our Revised Statutes, Code of Criminal Procedure, Art. 793, requires "that an attorney at law shall not disclose a communication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship," this including the preparation, execution, and contents of any instrument during and by reason of such relationship: and any order of a judge requiring an attorney to violate his duty to his client by making such disclosure is void. 1 Greenleaf's Evidence, sec. 237, 238; Warner Elev. & Mfg. Co. v. Houston, 28 S. W., 410; McIntosh v. Moore, 53 S. W., 611; Downing v. State, 136 S. W., 472; Rosebud v. State, 98 S. W., 858; Liggett v. Glen, 2 C. C. A., 286, 298; Foster v. Hall, 12 Pick., 89; Moore v. Bray, 10 Pa. St., 519; Neal v. Patten, 47 Ga. 75; Jackson v. Denison, 4 Wend., 558; Philman v. Marshall, 29 S. E., 598; Durkee v. Leland, 4 Vt., 612.

By virtue of Art. 1529 Revised Statutes, a party is entitled to the writ of habeas corpus from this court not merely where the court is without jurisdiction of the cause, but also where it exceeds its power and authority in adjudging that to be a contempt which involves no delinquency or misbehavior, but is only the assertion of a legal right.

This is made more apparent and conclusive by our Code of Criminal Procedure, Art. 183, which provides that "the writ of habeas corpus is intended to be applicable to all such cases of confinement and restraint where there is no lawful right in the person

exercising the power; or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law." Ex parte Degener, 17 S. W., 1111; Holman v. Mayor of Austin, 34 Texas, 668, 672, 673.

*C. W. Howth, Oliver J. Todd,* and *Sonfield, Nall & King,* for respondent.

The writ of habeas corpus cannot be made to perform the office of an appeal or writ of error. It may not be invoked to review or avoid an erroneous judgment of a court of competent jurisdiction. It challenges alone the jurisdiction of the court, and is available only to relieve one from restraint imposed by a judgment or order that is absolutely void on the ground that the court was without authority to make it. If it had authority to enter the order, the question whether the order was erroneously entered will not be inquired into. Darrah v. Westerlage, 44 Texas, 388; Perry v. State, 41 Texas, 488; Ex Parte Testard, 101 Texas, 250; Ex Parte Smith (Sup. Ct.) 214 S. W., 320; Ex Parte Kearney, 7 Wheat, 40, 5 L. Ed. 391; In Re Debs, 158 U. S., 564, 39 L. Ed. 1092; Ex Parte Terry, 128 U. S., 289, 32 L. Ed. 405; Ex Parte Swain, 150 U. S., 637, 37 L. Ed. 1207; In Re Nevitt, 117 Fed., 448.

It was for the District Court to determine the question of privilege, and finding that the privilege did not exist, to order the witness to answer. The privilege is that of the client and not of the attorney, and if the court erred in his judgment upon the question, the matter was subject to revision on appeal or writ of error. A mere error of law will not avail on habeas corpus. Peoples Bank v.' Brown, 112 Fed., 652; In Re Ruos, 159 Fed., 252; Caveney v. Tannahill, 1 Hill (N. Y.) 33, 37 Am. Dec. 287; Mitchell's Case, 12 Abb. Prac. (N. Y.) 249.

The rule of privilege being in contravention of the general rules of law, because of its tendency to suppress the truth, it should be somewhat strictly construed and not extended beyond the principles of that policy upon which it is allowed. Hyman v. Grant, 102 Texas, 50, 54; Hatton v. Robinson, 14 Pick. (Mass.) 416, 25 Am. Dec. 415, 418.

Wherever the client would be exempt from producing title deeds or documents of any kind, the attorney will not be compelled to produce such documents if they have been entrusted to his care by reason of the relation of attorney and client, nor will he be required to testify as to their contents, but he may be called as a witness to prove the existence of such a document and that it is in his possession, so as to entitle the opposite party, after due notice, to give parol evidence of its contents. 1 Greenleaf, Ev. (13th ed.) Secs. 241 and 245; 3 Jones, Ev. Sec. 768; 10 Ency. of Ev. 238; Zabel v. Schraeder,

35 Texas, 308; Chapman v. Peebles, 4 Southern, 273 (Ala.); Stokoe v. Railway Co., 42 N. W., 482 (Minn.).

An attorney may be compelled to produce in evidence any paper or document in his possession belonging to his client which the client himself could be compelled to produce. 1 Greenleaf, Ev. (13th Ed.) Sec. 239a; Warner El. Mfg. Co. v. Houston, 28 S. W., 405, 411; City of Bridgeport v. Bridgeport Co. (Conn.) 70 Atl., 650. 652; Jones v. Reilly, 66 N. E., 649. 650; Pearson v. Yoder (Okla.) 134 Pac., 421, 48 L. R. A. (N. S.) 334 and Case Note; Note, Ann. Cases 1913A, p. 23.

MR CHIEF JUSTICE CURETON delivered the opinion of the court.

The writ of habeas corpus was issued in this proceeding upon the application of relator, A. D. Lipscomb, complaining that he was restrained of his liberty by the sheriff of Jefferson County under an order and commitment of the Fifty-eighth District Court of that County, issued on January 14, 1922. The case was heard in this Court on February 1, 1922, on an agreed record. The relator was committed for contempt for refusing to answer certain questions propounded to him as a witness. The court at the time was en- gaged in the trial of the case of Lawson Gray v. Thomas H. Lang- ham and others, a suit in the ordinary form of trespass to try title, to recover a portion of the J. S. Johnson ¼ League Survey in Jef- ferson County, Texas, and for rents and damages. The agreed record states additional proceedings as follows:

"To this petition the defendants pleaded the general issue, not guilty, and the several statutes of limitation. And for cross action pleaded that the deed under which the plaintiff H. Lawson Gray claimed title to said land from Sam Lee Gray to him of date June 23, 1911, although absolute as to form, was in fact a mortgage only and intended by the parties thereto as a mortgage only, given by said Sam Lee Gray to the plaintiff to secure the said plaintiff in the collection of certain sums of money claimed to have been advanced by said H. Lawson Gray to said Sam Lee Gray and certain other advancements to be made in the future; and that in pursuance of said agreements and to give written evidence thereof the said plain- tiff and said Sam Lee Gray entered into a written contract or dec- laration of trust contemporaneously with said purported deed and as a part of the same transaction, by the terms of which it was mutually agreed in writing that said conveyance constituted only a security for indebtedness, and that the said Sam Lee Gray could at any time pay to the plaintiff any sum of money then due and receive reconveyance of said property, which said agreement, al- though made, executed and delivered to the said Sam Lee Gray, has never been recorded; and that said contract passed into the hands of the plaintiff as representing the estate of his brother Sam Lee Gray, or was destroyed or suppressed by the plaintiff; and

the defendants notified the plaintiff to produce the original on the trial, otherwise secondary proof of its contents would be made.

"The plaintiff by a supplemental petition denied all the facts and allegations contained in said answer and cross action of defendants.

"After the pleadings were duly read, the plaintiff offered in evidence a general warranty deed from Sam Lee Gray to the plaintiff, H. Lawson Gray, dated June 23, 1911, filed for record June 28, 1911, and recorded in Volume 123, page 614, of the deed records of Jefferson County, Texas, conveying the land involved in this suit; and for the purpose of showing common source only, offered in evidence a general warranty deed from Sam Lee Gray to the defendants, conveying the same land, dated the 26th day of June, 1911, and filled for record June 26, 1911, in Volume 123, page 612, of the deed records of Jefferson County, Texas. Thereupon the plaintiff rested. The defendants then offered in evidence for the purpose of showing title a general warranty deed from Sam Lee Gray to the defendants dated June 26, 1911, filed for record June 26, 1911, recorded in Volume 123, page 612, of the deed records of Jefferson County, Texas; and thereupon the defendants, for the purpose of showing the deed to the plaintiff from Sam Lee Gray was a mortgage, called the witness A. D. Lipscomb," who was sworn and took the witness stand.

The relator is an attorney, and in the preparation of the deed of date June 23, 1911, from Sam Lee Gray to H. Lawson Gray, was attorney for H. Lawson Gray. Many questions were propounded to him by counsel for the defendants, the purpose of which was to elicit testimony to the effect that at the time he prepared the deed from Sam Lee Gray to H. Lawson Gray to the land in controversy, there was prepared for and executed by the two Grays an additional instrument, which would show that the deed, though absolute on its face, was in fact a mortgage. Relator answered that he did prepare the deed dated June 23, 1911, from Sam Lee Gray to H. Lawson Gray, which as stated above, was placed of record a few days thereafter, but he declined to answer any question relative to the additional instrument inquired about, and declined to identify a purported copy thereof submitted to him.

We deem it unnecessary to set out the questions asked or further describe the copy of the instrument presented to the witness for identification.

When relator took the witness stand, and before any questions had been propounded to him, he asked that he be excused from testifying, because he thought he would be called on to testify as to matters which were confidential between himself and his former client, H. Lawson Gray. The court refused this request, and the questions referred to were propounded to him. Present counsel for

the plaintiff, H. Lawson Gray, also objected to the questions and the answers sought, on the ground that the answers would necessarily disclose privileged communications between H. Lawson Gray and relator while the latter was his attorney. The objections, however, did not go to the execution of the deed, absolute on its face, from Sam Lee Gray to H. Lawson Gray, which had been recorded, and which was introduced in evidence by the plaintiff, H. Lawson Gray, in the action before the court. The refusal of the relator to answer was limited to questions relative to the additional instrument inquired about. As to this additional instrument, the relator stated his position as follows:

"I can state my position at this point satisfactorily; it seems to me I can. I claim my privilege not to answer that question, because the only open matter that was involved in that service to my client, Lawson Gray, was the execution of the deed referred to. That was all that I was called upon by him to draw up, I mean. Whatever else was done was on my own suggestion and at my request, and was purely confidential; and in my belief, it would not have been executed at all or consented to by Lawson Gray, except upon my advice and insistence, and that was given because of the relation of attorney and client; and I was advising him very confidentially, because of his relationship to his younger brother, whom I regarded as being capable of contracting all right, but as being of that character of mind and degree of competency which renders one easily the subject of undue influence. For that reason, I requested the execution of the separate agreement, for my own satisfaction; and everything connected with it was of the most purely confidential nature as between attorney and client. I feel that I am under obligation to refuse testimony on any point in regard to it. Anything that I could say about it would probably be misunderstood, and certainly would have to be incomplete. It would not, by any means, be the whole truth, because going into everything necessarily would involve the disclosure of matters of confidence between attorney and client."

The relator also stated that on previous trials he had gone into the matter inquired about more or less, but now it was his deliberate judgment that it was improper for him to have done so, and he now insisted on the privilege.

The trial court overruled all the objections made, holding the instrument presented to the witness for identification was not protected by the law of privileged communications, for the reason that it had been executed, and was a part of the same transaction in which the deed, absolute on its face, from Sam Lee Gray to H. Lawson Gray, previously placed of record and offered in evidence by H. Lawson Gray, was executed. The court directed the witness to answer the various questions propounded by counsel for de-

fendants, and upon his refusal, adjudged him guilty of contempt. The court, in the judgment finding relator guilty of contempt, found that the testimony sought to be elicited from relator was on one of the vital questions involved in the suit, and provable only by the evidence of the relator. Because of his refusal to answer, the trial of the case was suspended, the jury discharged, and a mistrial entered.

The high standing of relator and his respectful attitude toward the court are unquestioned. He declined to answer the questions in a firm, positive, but very respectful manner, and for the reason only that he was sincerely insisting upon what he believed to be his legal right and duty. Apparently he was under the impression that the question of privilege was one personal to him as well as to his former client. To this we cannot assent. The law of privileged communications between attorney and client is that the privilege is that of the client. He alone is the one for whose protection the rule is enforced. Smith v. Boátman Sav. Bank, 1 Texas Civ. App., 115, 20 S. W., 1122; Chamberlayne on Evidence, Section 3695; 28 Ruling Case Law, 550; Chirac v. Reinicker, 11 Wheaton, 280, 294.

Where the attorney objects to testifying upon the ground of privilege, it is to be regarded as the objection of the client. 28 Ruling Case Law, 579. It would follow from this that an attorney as a witness has no personal interest in the matter, and a refusal of the court to sustain his objections on the ground of privilege is not a denial of any privilege or immunity, nor in any event erroneous as to him, although it might be so as to his client. In the trial out of which this proceeding arose, relator was not a party to the suit, and had no interest, right, or privilege which the law regards, affected by the ruling of the court. The questions of privilege and waiver, like those of materiality and relevancy of evidence, were for the trial court to determine, and not for relator as a witness. Harris v. Daugherty, 74 Texas, 1, 6, 15 Am. St., 812; 28 Ruling Case Law, 569. 570; Blair v. United States, 250 U. S., 282; Nelson v. United States, 201 U. S., 92, 115; Peoples Bank of Buffalo v. Brown, 112 Federal, 652, 654; In Re Ruos, 159 Federal, 252, 255.

From the foregoing it is quite clear that the trial court in ruling upon the questions propounded to relator was acting within its province, and whether or not the ruling was erroneous could in no event affect the validity of the order committing relator for contempt. In Re Swan, 158 U. S., 637, 651.

The rule is elementary that the writ of habeas corpus cannot be used as a method of appeal, or for the correction of errors of the trial court in the admission or exclusion of evidence. Darrah v. Westerlage, 44 Texas, 388, 389; Perry v. State, 41 Texas, 488, 490; 12 Ruling

Case Law, 1240; Ex Parte Kearney, 7 Wheaton, 39, 42, 43; Charlton v. Kelly, 229 U. S., 447, 457.

Ruling Case Law, cited above, states, "that neither irregularities nor errors, so far as they were within the jurisdiction of the court, can be inquired into on habeas corpus, but must be reviewed if at all on appeal or writ of error."

In Charlton v. Kelly, supra, Mr. Justice Lurton, delivering the opinion of the Supreme Court of the United States, said: "It must be conceded that impressive evidence of the insanity of the accused was offered by him and excluded. It is now said that this ruling was erroneous. But if so, this is not a writ of error, and mere errors in the rejection of evidence are not subject to review by a writ of habeas corpus."

The question is definitely settled by the opinions of this Court, as well as by courts of other jurisdictions, that on habeas corpus proceedings the inquiry is limited to the question of jurisdiction. Ex Parte O. M. Smith, 110 Texas, 55, 58, 214 S. W., 320; 6 Ruling Case Law, 540; 12 Ruling Case Law, 1192, 1196, 1210, 1239, 1240; Ex Parte Siebold, 100 U. S., 375; Ex Parte Kearney, 7 Wheaton, 38, 45; Ex Parte Terry, 128 U. S., 289; In Re Debs, 158 U. S., 564.

In the case of Ex Parte Smith, supra, which was a contempt case, Associate Justice Greeenwood, writing the opinion of this Court, said: "Since the applicant has wholly failed to show that the judgment committing him into the sheriff's custody is void, he cannot have same reviewed in this proceeding." This is the general rule announced by the text writers and various authorities which we have cited.

6 Ruling Case Law, supra, states the rule as follows:

"Since a writ of habeas corpus is a collateral remedy, and as the judgment of a court of competent jurisdiction upon a matter within its jurisdiction cannot be collaterally impeached, it naturally follows that in contempt proceedings, no question of jurisdiction being raised or involved, a conviction or commitment for contempt cannot be reviewed by means of this writ. It is consequently settled by an overwhelming weight of authority that where a court has jurisdiction of the person of the defendant, and of the subject-matter out of which the alleged contempt arises, he is not entitled to relief by means of this writ. It cannot be employed to bring up for review any of the facts of the case or errors of law committed at the trial. The rule in contempt proceedings is, that the functions of the writ of habeas corpus, when the party who has appealed to its aid is in custody under process, do not extend beyond an inquiry into the jurisdiction of the court by which the commitment for contempt was issued, and the validity of the process upon its face."

In the instant case the trial court, beyond question, had jurisdiction of the subject matter out of which the alleged contempt arose, and of the person of the defendant. It is, therefore, plain that re-

lator presents no matter which this Court may review in this proceeding.

The Supreme Court does not have original jurisdiction to review and determine the correctness of the judgments of trial courts, except by writ of error to the Courts of Civil Appeals. The appellate jurisdiction of the Court may be exercised only in accordance with the constitution and statutes, and only upon appeal by parties to the suit may errors in the admission or rejection of evidence be revised. Were we to revise the ruling of the trial court in this case on the question of privilege, and therefore determine the admissibility of the testimony of the relator, we would be exercising our powers of review in a manner and on occasion not provided for by law, and at the instance of one not a party to the suit in which it is claimed the erroneous ruling was made.

Revised Statutes, Article 1529, invoked by relator, names the occasions on which the Supreme Court may exercise its original jurisdiction by the issuance of writs of habeas corpus; but this Article must be construed and interpreted in connection with the statutes relating to the appellate jurisdiction of the court, since these statutes are all in pari materia. Hanrick v. Hanrick, 54 Texas, 101, 109; Cannon's Admr. v. Vaughan, 12 Texas, 399. So construed, it is quite plain that the remedy of habeas corpus is not intended to conflict with or supplant the remedy of revision by appeal. The emergency clause of the Act of 1905, Chapter 17, General Laws of the Twenty-ninth Legislature, Section 1 of which became Article 1529 of the Revised Statutes, can have no reference to the correction of those errors of law for which the plain remedy by appeal was then existent. The purpose of the Act was to carry into effect the constitutional provision that the Supreme Court should have power to issue such writs of habeas corpus as may be prescribed by law. Article 1529 clearly specifies the cases in which the Supreme Court may issue writs of habeas corpus, but does not define the extent of review by that remedy. Since a plain and simple remedy by appeal for erroneous rulings of trial courts on questions of the admissibility of testimony was then provided, the emergency clause to this Act could have no reference to the revision of this character of error, or to granting relief from the consequences of any such erroneous ruling. Besides, the emergency clause cannot control the plain purpose of the Act, which, when construed with the statutes relating to appeals, evinces no purpose to enlarge the original jurisdiction of the court by giving it appellate or revisory powers in habeas corpus proceedings.

In the instance of a void order brought before us on habeas corpus, we are not revising the decision. We simply determine whether or not there has been, in fact, any decision. If the trial court had no jurisdiction, then there was no decision. What it has done is a nullity. It is as though nothing had been done. We do not review

the decision, because there is nothing to review. We are in no sense exercising an appellate jurisdiction, but are simply determining, in the exercise of our original jurisdiction, whether or not a citizen is restrained of his liberty without due process; by which is meant whether or not his restraint is the result of a hearing before a competent tribunal, having jurisdiction of the subject matter, after notice, and an opportunity to be heard. If the elements of due process are not present, then our jurisdiction attaches and the relator may be released from custody. If all are present, then our inquiry ends. If any error has been committed by a tribunal properly erected, having jurisdiction, after notice and opportunity to be heard, then the error, when within our appellate jurisdiction, may be reviewed by us by properly invoking that jurisdiction, but not in a collateral inquiry by habeas corpus.

It may be said that no remedy by appeal is provided for the witness in a case such as this one. This is true; but the failure to provide for such an appeal does not deprive the witness of any rights, for the reason that the witness has no rights which are regarded by the law. The question of privilege is not personal to the witness, but to his client. Authorities supra.

In this case, relator's former client had the plain and simple remedy of exception and appeal from any erroneous ruling of the trial court, and the witness should have answered such questions as the trial court directed him to answer. It was the duty and right of the court, not of the witness, to determine the questions of privilege, waiver, and admissibility of the evidence. It was the duty of the witness to abide by the ruling of the court, and answer the questions; and if any of the rights of his former client were thereby invaded, then the remedy by appeal is effectual for the correction of all such errors and the restoration to the client of his rights.

It is unnecessary for us to consider a case where the questions propounded are calculated to elicit privileged communications between an attorney and client, neither of whom are parties to the cause on trial. That state of facts is not before us. What we do hold is, that where, as in the instant case, the client, in whose behalf the attorney, as a witness, claims the privilege, and where the client, as a party to the suit, also interposes the objection that the evidence sought to be elicited is privileged, has an ample, complete, and adequate remedy by appeal from erroneous rulings, and the witness must answer the questions when the objections thereto have been overruled by the trial court.

From what we have said it follows that the relator must be remanded to the custody of the sheriff of Jefferson County, and it is so ordered.

*Relator remanded to custody.*