**GALVESTON, H. & H. R. CO. v. ANDERSON. (No. 7859.)**

(Court of Civil Appeals of Texas. Galveston. April 15, 1920. Dissenting Opinion, April 19, 1920. Rehearing Denied Feb. 13, 1921.)

**1. Infants ⬯14—Railroad held not "establishment using dangerous machinery" within statute relating to employment of minor.**

Pen. Code 1911, art. 1050, prohibiting employment of children under 15 years of age "in or about any manufacturing or other establishment using dangerous machinery, or about the machinery in any mill or factory, or in any distillery, brewery," *held* inapplicable to employment by railroad of call boy who was required, in the discharge of his duties, to pass over and upon numerous tracks, frogs, and switches; railroads not being "other establishment using dangerous machinery," within the statute, in view of the ejusdem generis rule of construction.

**2. Statutes ⬯194—"Ejusdem generis" rule of construction defined.**

Where an enumeration of specific things is followed by some general word or phrase, such general word or phrase, under the ejusdem generis rule of construction, is to be *held* to refer to things of the same kind as those specifically mentioned.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ejusdem generis.]

**3. Infants ⬯14—Statute regulating child labor held to repeal other statute relating to employment of infants.**

Act March 6, 1917 (Acts 35th Leg. [1917] c. 59 [Vernon's Ann. Pen. Code Supp. 1918, arts. 1050e–1050*l*]), regulating and prohibiting child labor, *held* to repeal Pen. Code 1911, art. 1050, prohibiting the employment of children under 15 years of age in particular work.

**4. Statutes ⬯273—Violation of statute subsequently repealed not evidence of negligence.**

Employer's violation of Pen. Code 1911, art. 1050, prohibiting employment of children under 15 years of age in particular work, was not prima facie evidence of negligence on part of employer in action for injuries to infant employed in violation thereof, where such statute at the time of the trial had been repealed by Act March 6, 1917 (Acts 35th Leg. [1917] c. 59 [Vernon's Ann. Pen. Code Supp. 1918, arts. 1050e–1050*l*]).

**5. Statutes ⬯277—Considered as never having existed after repeal without saving clause.**

Where an act is repealed without a saving clause, it is considered, except as to transactions passed and closed, as though it had never existed.

Graves, J., dissenting.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by James Anderson, a minor, by W. J. Anderson, as next friend, against the Galveston, Houston & Henderson Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

McMeans, Garrison & Pollard and John M. King, all of Houston, and John L. Darrouzet, of Galveston, for appellant.

Fuller & Brady, of Galveston, Geo. G. Clough, of Houston, and John T. Wheeler, of Galveston, for appellee.

LANE, J. James Anderson, a minor, by W. J. Anderson, as next friend, brought this suit against the Galveston, Houston & Henderson Railroad Company to recover damages for personal injuries sustained by him on July 27, 1913, while in the employment of the defendant as a call boy. He alleged that during the time of his employment and at the time of his injuries he was the age of 15 years; that in the performance of his duties as call boy he was compelled and required to pass over, through, and upon numerous tracks, frogs, and switches, and right of way of the defendant through its yards, which tracks were used by defendant for the purpose of switching cars and operating trains at all hours of the day and

night; that the office of defendant where plaintiff was required to report for duty, and from which he received his instructions to carry messages and other duties required of him, is situated within the yards of defendant, and the only access thereto is through, over, and along and upon the many and numerous tracks, frogs, and switches of the defendant used and operated as aforesaid. He further alleged:

"Plaintiff represents that it is the custom well known to defendant, its agents, servants, and employés, for its employés, in going from and coming to their employment, it is necessary to pass along and upon the tracks and right of way of the defendant in its said yards, and that said right is exercised by the employés of defendant with the full knowledge and consent and requirement of said defendant, and is necessary that such use be made by said employés for the reason that there was on the 27th day of July, 1913, no other means of ingress or egress, to and from their several employments, including the employment of the plaintiff herein; that plaintiff's employment and duty required of him, in performing the service and carrying out instructions, to pass over, through, and along said tracks as aforesaid."

Plaintiff then alleged his injuries on the 27th day of July, 1913, their nature, etc. He then alleged as follows:

"Plaintiff represents and shows to the court that the injuries received by him were the immediate and proximate result of negligence of the defendant, its agents, servants, and employés, for this: (a) That he was but a child fourteen years of age, which was known to defendant, its agents, servants, and employés, in employing him in a dangerous occupation as that of a call boy, his employment requiring him to labor and perform services for the defendant in and about dangerous machinery, such as locomotive engines, cars, railroad tracks, switch targets, and other equipment of defendant; (b) that defendant was guilty of negligence in employing plaintiff to work in the capacity hereinbefore alleged for the reason that plaintiff was a minor under fifteen years of age, and that said employment required plaintiff, in the performance of his duties, to be about dangerous machinery of defendant, in violation of the Penal Code of the State of Texas, in article 1050, Act of 1911, said statute being in words and figures as follows:

" 'Any person, or any agent, or any employé of any person, firm or corporation who shall hereafter employ any child under the age of fifteen years to labor in or about any manufacturing or other establishment using dangerous machinery, or about the machinery in any mill or factory, * * * shall be * * * guilty of a misdemeanor,' etc. P. C. art. 1050; Acts 1911, p. 75 [Vernon's Ann. Pen. Code 1916, art. 1050.]"

He then alleged many and numerous other acts of negligence on the part of defendant railroad company, all of which he alleged were the proximate cause of his injuries; but, as such other allegations were withdrawn by him during the trial, any further statement of them here is unnecessary.

The defendant answered by general denial, and special pleas of contributory negligence and assumed risk.

The case was tried before a jury, to whom the court submitted same upon the following charge:

"Gentlemen: (1) If you find from the evidence that the plaintiff was under fifteen years of age at the time of the accident, you will return a verdict for the plaintiff, and assess his damages at such an amount as would reasonably compensate the plaintiff for the injuries alleged, so far as the same may be shown by the evidence, based on his mental and physical suffering, the permanency or otherwise of his injuries. If you find from the evidence that the plaintiff was himself guilty of the want of ordinary care without which the injury would not have occurred, then you will diminish the damages proportionately. In estimating damages, you may allow an amount not exceeding the reasonable value, if paid now, of such future damages.

"(2) If you believe from the evidence that the plaintiff was fifteen years of age or over at the time of the accident complained of, you will return a verdict for the defendant.

"(3) The burden of proof to show that the plaintiff was under fifteen years of age is on the plaintiff."

"In this case you are instructed that the plaintiff has withdrawn all of the allegations against the defendant of negligence save and except that portion of the petition which alleges that the defendant company was negligent in employing the plaintiff in violation of the penal statute. You will, therefore, not take into consideration any other act of negligence that may have been alleged by the plaintiff."

The verdict of the jury was for the plaintiff for the sum of $3,000. Judgment was entered accordingly, from which defendant has appealed.

The plaintiff having abandoned all allegations of negligence on the part of defendant save and except the allegation that defendant committed an act of negligence in employing him as a call boy in violation of article 1050 of the Penal Code, prohibiting the employment of persons in certain establishments, etc., and under certain conditions, while under the age of fifteen years, appellant first contends that said article 1050 did not relate to, nor did it apply to, the employment of boys under the age of fifteen years by railroad companies in any capacity, and especially as to the employment of such boys as call boys or messengers, and therefore there was no violation of said article by defendant in so employing plaintiff, and hence the court erred in not instructing a verdict for defendant upon its written request.

[1] The majority of this court has reached the conclusion that the foregoing contention should be sustained.

The acts forbidden by article 1050, Acts of 1911, are the employment of "any child under the age of fifteen years to labor in or about any manufacturing or other establishment using dangerous machinery, or about the machinery in any mill or factory, or in any distillery, brewery, or to labor in any capacity in the manufacture · of goods for immoral purposes, or where their health may be impaired or morals debased, or to send any child to any disorderly house, bawdy house, or assignation house."

It was shown that appellee was employed as a call boy, his duties being to call crews and run errands for the appellant, to get and deliver waybills to the proper employés in and about the railway yards and in the city of Galveston; that in the performance of these duties he was required to go into the railway yards where cars and engines were being moved from place to place, to make calls and deliver messages and waybills, and that at the time ·of his injury he was on his way from the office of appellant to his home to get his supper, with instructions to hurry back.

As before stated, it is the contention of appellant that the statute in question had no application to the employment by railroad companies of boys under 15 years of age to perform services such as the plaintiff was employed to perform; that the inhibition was against employing such child to labor in or about any manufacturing or other establishments using dangerous machinery, or about the machinery in any mill or factory, and not to employment by railway companies of messenger boys. Appellant contends that had the Legislature intended to direct the inhibition against railroad companies it would have been an easy matter for it to have so declared, and that it would no doubt have so declared had it been intended so to do.

It will be observed that establishments and places where the employment of children are forbidden are designated as manufacturing establishments using dangerous machinery; other establishments using dangerous machinery; about machinery in any mill or factory. If the employment of a child by a railroad company is inhibited by this statute, it is embraced in the phrase "or other establishments using dangerous machinery." We are not disposed to include railroads in the term "other establishments using dangerous machinery" found in the statute being discussed. While a railroad does in certain places and manner use much dangerous machinery in performance of its business and purposes, it can hardly be referred to as an establishment where dangerous machinery is used. If the statute in question is applicable to railroad companies, such companies are forbidden to employ a child under 15 years of age in any capacity whatever solely because they, in some places and manner, use dangerous machinery. Such, we think, could not have been the intention of the Legislature in passing this statute. The caption of this bill declares that it is "An act to regulate the employment of children in factories, mills, mines, quarries, distilleries, breweries, manufacturing or other establishments using dangerous machinery," and nowhere in the entire act are railroads mentioned. We can hardly be led to believe that, if it was intended to embrace railroads in the class of establishments mentioned, all these minor establishments would have been specifically named, while the great system of railroads were left unnamed, and, if included, were to be so included by a doubtful construction of the act. The rule of construction ejusdem generis would confine the inhibition to the same class of employment as those enumerated in the act, and would not extend them to other and different classes, such as railroads.

[2] The rule, as we understand it, is that where an enumeration of specific things is followed by some general word or phrase, such general word or phrase is to be held to refer to things of the same kind as those specifically mentioned. Right of Way Oil Co. v. Gladys City Oil & Gas Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Ex parte Roquemore, 60 Tex. Cr. R. 282, 131 S. W. 1101, 32 L. R. A. (N. S.) 1166; 2 Lewis Stat. Const. § 422, p. 815 and 817.

In Right of Way Oil Co. v. Gladys City Oil & Gas Co., supra, the Supreme Court of this state said:

"The rule of construction, 'ejusdem generis,' is thus stated, 'General words following particular words will not include things of a superior class.' There is this further restriction of general words following particular words, that the general words will not include any of a class superior to that to which the particular words belong."

For an exhaustive and comprehensive discussion of the doctrine of "ejusdem generis" see Ex parte Roquemore, 60 Tex. Cr. R. 282, 131 S. W. 1101, 32 L. R. A. (N. S.) 1186. In that case Judge Ramsey, in speaking for our Court of Criminal Appeals, said:

"The doctrine of ejusdem generis is applied in all cases where there is doubt as to the intention of the Legislature, and, as a rule of statutory construction, is stated to be that, where general words follow particular ones in a statute, the general words will be limited in their meaning or restricted to things of like kind and nature with those specified. * * * It is within the power of the Legislature to make the playing of baseball on Sunday a misdemeanor, but, if such be the purpose, apt words can readily be employed which will express that intention and leave no room for doubt.

"In the case of Ex parte Muckenfuss, 52 Tex. Cr. R. 467, 107 S. W. 1131, we had occasion to review and consider at length the rule of

construction applicable to a statute such as this. We there said: 'It is a familiar rule that, where general words follow particular and specific words, the former must be confined to things of the same kind. It has been held, also, that this rule is especially applicable in the interpretation of statutes defining crimes and regulating their punishment. * * * The doctrine itself is thus well expressed in Lewis' Sutherland, Statutory Construction: 'When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of ejusdem generis.' Some judicial statements of this doctrine are here given. 'When general words follow an enumeration of particular things, such words must be held to include only such matters or objects as are of the same kind as those specifically enumerated.' 'The rule is that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases of like kind to those designated by the particular words.' 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear if standing alone, but as related to the words of more definite and particular meaning with which they are associated;'" citing numerous cases.

By the second assignment it is insisted that there was no basis for the judgment rendered against appellant, even if article 1050, pleaded by appellee, did apply to railroad companies, for the reason that said statute, being the acts of the Legislature of 1911, was repealed by the act of March 6, 1917 (General Laws 35th Legislature, p. 104 [Vernon's Ann. Pen. Code Supp. 1918, arts. 1050e–1050l]), after the injury of appellee, but before the trial of this cause, and that the latter act has no application to the employment of a child by a railroad company in the capacity in which appellee was employed; that, since article 1050 was repealed by the act of 1917, the employment of appellee by appellant cannot now be held, of itself, to constitute negligence on the part of appellant for which appellee could recover damages for his injuries while so employed. In other words, that, as the latter act repealed the former, all acts in violation of the former, the provisions of which are repealed, and which are not forbidden by the latter, are pardoned, and penalties incurred, or causes of action arising, only by reason of the provisions of such repealed statute, are no longer enforceable; that where an act of the Legislature is repealed without a saving clause it is considered, except as to transactions passed and closed, as though it had never existed.

[3] That it was the intention of the Legislature by the passage of both the Acts of 1911 and 1917 to regulate, and, under certain conditions, prohibit, the employment of children under certain ages in certain places, and by the latter to revise the former and become a substitute therefor; that the latter was intended to cover the whole subject-matter of regulating and prohibiting child labor, and that the passage of the latter had the effect to repeal the former—we have no doubt. 1 Lewis' Sutherland's Stat. Cons. pp. 465, 483, and 515; Rogers v. Watrous, 8 Tex. 62, 58 Am. Dec. 100; Voigt v. Ry. Co., 94 Tex. 365, 60 S. W. 658; State v. Ry. Co., 58 Tex. Civ App. 528, 125 S. W. 53; Goodrich v. Wallis, 143 S. W. 285; Cain v. State, 20 Tex. 364 and 370; Tunstall v. Wormley, 54 Tex. 480.

It is in effect held in all the cases cited that, while the law does not favor repeal by implication, it must be held that a subsequent statute revising the subject-matter of a former one, and evidently intended as a substitute therefor, although it contains no express words to that effect, does operate to repeal the former; that though a subsequent statute be not repugnant to a former one, yet, if it was clearly intended to prescribe the only rules which should govern, it repeals the prior statute.

As before stated, we think it clear that the act of 1917 was intended to be and is in fact a revision of the act of 1911; that it was intended to and does comprehend the entire subject-matter covered by the former, and was intended to be a substitute for all prior statutes on the subject; and that it operates as a repeal thereof by reasonable implication.

[4] Having reached the conclusion that the act of 1917 repealed the act of 1911 pleaded by appellee, we now come to consider the further contention of appellant, that if it be conceded that the general clause "or other establishments using dangerous machinery" found in the act of 1911 did relate to and include railroad companies, that act was repealed before the trial of this cause, and therefore a violation of its provisions was not at the time of trial prima facie evidence of negligence on the part of appellant, as found by the trial court.

[5] We think this contention should be also sustained. In 1 Lewis' Sutherland's Stat. Cons. § 282, p. 544, the general rule affecting causes of action arising upon a law, but tried after the repeal of such law, is stated as follows:

"The general rule is that where an act of the Legislature is repealed without a saving clause it is considered, except as to transac-

tions passed and closed, as though it had never existed."

Again, in section 285, p. 552, the author further states the rule as follows:

"When a cause of action is founded on a statute, the repeal of the statute before final judgment destroys the right, and the judgment is not final in this sense so long as the right of exception thereto remains."

In State v. T. & N. O. R. R. Co., 58 Tex. Civ. App. 528, 125 S. W. 53, heretofore cited, it is stated:

"By the repeal of a statute by a later statute on the same subject, all acts or omissions in violation of the former statute are pardoned, and the penalties incurred thereunder are no longer enforceable."

We quote from the syllabus of Goodrich v. Wallis, 143 S. W. 285:

"(1) The right of a wife to recover on a liquor dealer's bond a penalty for the sale of liquor by the dealer to her husband, a habitual drunkard, depends solely on the statute, and may be extinguished by a repeal of the statute.

"(2) Where a statute giving a special remedy is repealed without a saving clause in favor of pending litigation, a pending suit cannot be prosecuted after the repeal."

Quoting from the opinion in that case:

"The fact that the plaintiff's suit was pending at the time of the passage of the last act could make no difference; for it is well settled that if a statute, giving a special remedy, is repealed without a saving clause in favor of pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal goes into effect, it cannot be granted thereafter;" citing Vance v. Rankin, 194 Ill. 625, 62 N. E. 807, 88 Am. St. Rep. 173; P. & A. Ry. Co. v. State, 45 Fla. 86, 33 South. 985, 110 Am. St. Rep. 67; Taylor v. Strayer, 167 Ind. 23, 78 N. E. 236, 119 Am. St. Rep. 469.

In Ex parte McCardle (U. S.) 7 Wall. 506, 19 L. Ed. at page 265, the Supreme Court of the United States says:

"On the other hand, the general rule, supported by the best elementary writers (Dwarris on Statutes, 538), is that, 'when an act of the Legislature is repealed, it must be considered, except as to transactions passed and closed, as if it never existed.' And the effect of repealing acts upon suits under acts repealed has been determined by the adjudications of this court. The subject was fully considered in Norris v. Crocker, 13 How. 429, and more recently in Ins. Co. v. Ritchie, 5 Wall. 541, [18 L. Ed. 540]. In both of these cases it was held that no judgment could be rendered in a suit after the repeal of the act under which it was brought and prosecuted."

In Norris v. Crocker, 13 How. 429, 14 L. Ed. 210, referred to in Ex parte McCardle, it is stated:

"As the plaintiff's right to recover depended entirely on the statute, its repeal deprived the court of jurisdiction over the subject-matter. And in the next place, as the plaintiff had no vested right in the penalty, the Legislature might discharge the defendant by repealing the law."

In England, Chief Justice Tindal, in Surtess v. Ellison, 9 B. & C., 750, says:

"I take the effect of a repealing statute to obliterate it as completely from the records of the parliament as if it had never passed; and it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted, and concluded whilst it was an existing law."

In 36 Cyc. 1169, the general rule is thus stated:

"When a statute is repealed it must be considered as if it had never existed, except as to vested rights which have accrued under it."

See, also, Anderson v. Byrnes, 122 Cal. 272, 54 Pac. 822; McNabb v. Trustees, 103 Ill. App. 156.

There are other incidental questions raised by appellant, but in view of our holding on the questions already discussed and decided, we deem it unnecessary to pass upon them in detail, but will overrule them without comment.

For the reasons pointed out, we think the judgment of the trial court should be reversed, and that judgment should be here rendered for appellant; and it is so ordered.

Reversed and rendered.

GRAVES, J. I dissent, believing that article 1050 of the Penal Code does apply in this instance; that it was not impliedly repealed by the act of March 6, 1917; and that, even if it be conceded that such repeal took place, the appellant was nevertheless liable for the consequence of the completed act done while the first statute was in effect.

If the majority opinion is adhered to upon rehearing, I hope to further extend these views.

PER CURIAM. Rehearing denied.

GRAVES J. (dissenting). The argument of the appellee upon rehearing, although at much greater length than I should myself have written it, so well elaborates my original view on the questions here involved—confirmed as they have been on reconsideration of the cause—that I venture this adoption of it as my further dissenting opinion:

"Was plaintiff's case abated by the act of 1917? If it was, it is wholly immaterial whether the Legislature intended to prohibit railroads from employing children in and about a death-dealing switching yard.

"The opinion of the majority holds that the

word 'establishment,' as used in the act, did not mean, and was not intended to mean, a railroad yard; no authority is cited to support the conclusion reached.

"Whether the question involved has been passed on adversely in other states we little know; we are satisfied if the Texas construction is with us. The distinction we contend for was pointed out by the late Judge Reese in Stirling v. Bettis, in this court, June 16, 1913, 159 S. W. 915, by a unanimous opinion. In that case the plaintiff was employed by the defendant under the act of the 28th Legislature, c. 28, approved March 6, 1903, and the suit was filed October 15, 1910, and tried May, 1912, after the act of 1911 went into effect. On the date of the trial, therefore, the act which was the law at the time of the injury, October 3, 1910, was no longer the law generally, except in so far as it was a law by continuation into a new act of practically, if not actually, the same provision. At any rate, the act of 1903 (Laws 1903, c. 28) was expressly repealed by the act of 1911. The same proposition was urged by the appellant as is here urged—that the suit must abate by reason of the implied repeal of the act under which it was brought. But this proposition was expressly overruled. Judge Reese, speaking for this court, says:

" 'The statute referred to was expressly repealed by section 3 of an act of the Thirty-Second Legislature, * * * and was therefore not in force when this case was tried, and it is contended by appellee that its provisions are not applicable to this case. The latter act is much more comprehensive in its terms than the former, and makes it a misdemeanor to employ a person under the age of 15 years "in and about any manufacturing or other establishment using dangerous machinery," etc., without any of the conditions embodied in the former act which tend decidedly to weaken its force. According to the provisions of the latter act, it was clearly unlawful for appellee to employ appellant in the work in which he was engaged. Whatever the law may be in other jurisdictions, it is settled in this state, by an unbroken line of decisions, that an act prohibited by positive law is negligence per se, where any person is injured as a proximate consequence of such act. Street on Personal Injuries in Texas, 111 et seq., with authorities cited. The principle of law invoked by appellee, that actions to recover forfeitures and penalties imposed by statute abate with the repeal of the statute, has no application to the present case. I. & G. N. R. R. Co. v. Culpepper, 38 S. W. 818, approved by Supreme Court, same case 90 Tex. 627, 40 S. W. 386. In so far as the statute affecting the quality of appellee's act in employing appellant, making it negligence per se, its subsequent repeal could have no effect. This action is not based upon the statute in the sense that would cause the repeal of the statute to abate the action.'

"In I. & G. N. R. R. v. Culpepper, 38 S. W. 818, the court had under consideration the fellow servants act of 1891 (Laws 1891, c. 24); it was contended that the act of 1893 (Laws 1893, c. 91) repealed the act of 1891, and an action brought under the act of 1891 must abate. Chief Judge James, speaking for the court, says:

" 'It is * * * contended that the act of 1891, being repealed in 1893 by the new act on the subject of fellow servants, requires this case to be considered as at common law, although the latter act contained and continued the same provision as in the former, so far as the issues here involved are concerned. In reference to the last of these questions, we have no hesitation in deciding that the law of 1891 is the law of this case. Its repeal would not affect its force as fixing or determining the liability of defendant in cases which arose under its provisions.'

"A writ of error was granted, and the case went to the Supreme Court. The opinion is by Judge Gaines, 90 Tex. 627, 40 S. W. 386. That eminent jurist says:

" 'The collision occurred on the 5th day of November, 1892, while the act of March 10, 1891, in relation to fellow servants of railroad companies was in force. That act was repealed by that of May 4, 1893 (Laws 1893, p. 121), but the Court of Civil Appeals correctly held, as we think, that the repeal did not affect the question of liability in this case.'

"The only case cited against this doctrine and finding is a liquor bond case; a case of statutory penalty for a violation of the law. Goodrich v. Wallis, 143 S. W. 285. Obviously a penal statute, or a statute imposing statutory penalties in which the defendant has no chance or choice to offer evidence to reduce damages or penalties assessed, cannot be the subject of the same construction as a remedial statute in a civil cause of action. Tunstall v. Wormley, 54 Tex. 476, is also cited, but is not in point. In that case it was held only that a corporation attempted to be chartered under a law that had been repealed had no standing in court. Certainly not; it had no legal existence. The court says:

" 'It follows that as the petition of the plaintiff in this case shows that the Missionary Baptist Church of Brazoria was never organized under the provisions of the act of 1874, that no charter was drawn up for it or filed in the office of Secretary of State, it did not form a "private corporation"; it was incapable, as a corporation, of suing or being sued, or of holding real estate; that it had no corporate name or existence, and therefore that the demurrer of the defendant should have been sustained.'

"In this case the plaintiff is a natural person, and he sued as such, and the case of Tunstall v. Wormley, cited in the opinion, has no application.

"Cain v. State, 20 Tex. 364, is also cited. This is a criminal case in which defendant is charged with selling intoxicating liquors without a license. It was probably cited in the opinion in error. Manifestly, a different rule obtains in a criminal case.

"Rogers v. Watrous, 8 Tex. 64, 65, 58 Am. Dec. 100, cited, only holds that a subsequent statute revising the subject of a former one operates as a repeal thereof; about which there is no argument. The opinion holds that a change of venue could not have been had in the case because at the time of the order the law had been amended.

"This identical question, in a liquor bond case (Jessee v. De Shong, 105 S. W. 1011), was decided, by the Court of Civil Appeals at Texarkana, directly contrary to the opinion of this court in the instant case.

"In that case a suit was brought on a liquor

dealer's bond to recover the statutory penalty as liquidated damages; the suit was brought under article 5060g, R. S. 1895, which was superseded by the Baskin-McGregor Law of 1907 (Laws 1907, c. 138), which, like the instant case, repealed the former law, if at all, by implication only. The suit was brought March 9, 1906, and tried August 13, 1907, after the act of 1907 (30th Legislature) took effect. It was urged on the trial, and in the Court of Civil Appeals, that the act of the 30th Legislature repealed the former law, and pardoned all offenses and canceled all causes of action, and abated all suits. This effect was denied by the court, citing, among others, McMullen v. Guest, 6 Tex. 275, and Pacific v. Joliffe, 69 U. S. (2 Wall.) 450, 17 L. Ed. 807. The court says in conclusion:

" 'This suit was not abated, and the old remedy as to the aggrieved party remains.'

"Section 3 of the final title to the Revised Statutes is as follows:

" 'Sec. 3. That the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice.'

"Section 5 of final title provides:

" 'That the repeal of any statute, or any portion thereof, by the preceding section, shall not affect or impair any act done, or right vested or accrued, or any proceeding, suit, or proposition, had or commenced in any cause before such repeal shall take effect, * * *.'

" 'The Constitution, § 16, art. 1, provides:

" 'No bill of attainder, ex post facto law, retroactive law, or any other law impairing the obligation of contracts, shall be made.'

"It has been held that the provision against retroactive laws is not limited to such laws as affect the obligation of contracts, but the term is to be applied to laws generally, whether relating to torts or contracts. De Cordova v. Galveston, 4 Tex. 474. Every statute which takes away or impairs vested rights, acquired under existing laws, * * * must be deemed retrospective.

"Construing this provision of the Constitution in Keith v. Guedry, 114 S. W. 396, the Court of Civil Appeals says:

" 'A "retroactive law" is one made to affect acts or transactions occurring before it came into effect, or rights already accrued, and which imparts to them * * * effects which were not inherent in their nature in the contemplation of the law as it stood at the time of their occurrence. It gives a right where none * * * existed, or takes away one which before existed,' citing authorities.

"In Mellinger v. City of Houston, 68 Tex. 36, 3 S. W. 249, Judge Stayton, speaking for the court, says:

" 'Laws are deemed retrospective, and within constitutional prohibition, which by retrospective operation destroy or impair vested rights, or rights to do certain actions, or possess certain things, according to the law of the land; * * * but laws which affect the remedy merely are not within the scope of the inhibition unless the remedy be taken away altogeth-er, or incumbered with conditions which would render it useless or impracticable to pursue it.'

"When Jimmy Anderson brought his suit the law protected him in that right; it vested him with the cause of action on which he sued.

"We are mindful that the court has held that no one had a vested right in a statutory 'penalty,' e. g., to recover on a liquor dealer's bond, for the policy of the law does not favor penalties and forfeitures; but we insist that a cause of action for statutory negligence stands upon a different footing; the cause of action having accrued, the Legislature could not (and did not) pardon the same, and the subsequent passage of a law on the same subject could not (and did not) deprive plaintiff of his right to recover against the wrongdoer. McMullen v. Guest, 6 Tex. 275; Collins v. Warren, 63 Tex. 311; Jessee v. De Shong, 105 S. W. 1011; James v. Oakland Traction Co., 10 Cal. App. 785, 103 Pac. 1083.

"The question then resolves itself down to this: That one case, Goodrich v. Wallis, a suit on a liquor dealer's bond to recover a statutory penalty, holds that the repeal of the specific act of the Legislature on which the suit was brought operated to abate the suit. Against this is the express holding of the Court of Civil Appeals in Jessee v. De Shong, 105 S. W. 1011; the Court of Civil Appeals in the case of I. & G. N. R. R. v. Culpepper, 38 S. W. 818, construing the same proposition under the fellow servants act; the Supreme Court in the same case, adopting the construction and holdings of the Court of Civil Appeals, 90 Tex. 627, 40 S. W. 386; and a former unanimous decision of this court in Stirling v. Bettis, 159 S. W. 915, citing both the Culpepper cases above, without any objection or dissent from any member of the court at that time. And this view of the law is further supported by McMullen v. Guest, 6 Tex. 275, and the constitutional provision against retroactive laws and the decisions thereunder.

"It is therefore unnecessary to go out of the state for authorities; our own Supreme Court has spoken at least twice on the subject, and in no uncertain language:

" 'The collision occurred on the 5th day of November, 1892, while the act of March 10, 1891, in relation to fellow servants, * * * was in force. That act was repealed by that of May 4, 1893 (Laws 1893, p. 121); but the Court of Civil Appeals correctly held, as we think, that the repeal did not affect the question of liability in this case.' Supreme Court in I. & G. N. v. Culpepper, 40 S. W. 386.

"The Court of Civil Appeals used the following language in passing upon this question:

" 'We have no hesitation in deciding that the law of 1891 is the law of this case. Its repeal would not affect its force as fixing or determining the liability of defendant in cases which arose under its provisions.' I. & G. N. v. Culpepper, 38 S. W. 818.

"This court, speaking through Judge Reese, in Stirling v. Bettis, in citing the above authorities, adds thereto the following pertinent remarks:

" 'In so far as the statute affected the quality of appellee's act in employing appellant, making it negligence per se, its subsequent repeal could have no effect.'

"Since the question to be determined is whether or not railroads are within the classes of employment prohibited by article 1050 of the Penal Code, the legitimate inquiry, it occurs to us, is to ascertain the purpose of the Legislature in the passage of the act in question, and not to apply a technical rule of doubtful application.

"What was the purpose of the Legislature in the passage of this act? Manifestly it was the intention of the lawmakers to throw a shield about children of tender age whose economic condition necessitated their entering into the industrial world for the purpose of gaining a livelihood.

"Appellant says in its brief, and the court in its opinion, that had the Legislature intended to include the great system of railroads within the inhibition, the Legislature would have named them. The court says that, if the statute in question is applicable to railroad companies, such companies are forbidden to employ a child under 15 years of age in any capacity whatever, solely because they, in some places and manner, use dangerous machinery. Obviously, it seems to us, this was not the intention of the Legislature. Would the court say that a manufacturing plant, for instance in Houston, Tex., would be prohibited from employing a boy as office boy in a branch office they maintained in Galveston, Tex., 50 miles from the dangerous machinery which they used in their manufacturing plant? We think not. Neither would a railroad company incur the penalties of article 1050, should they employ an office boy or a child under the age of 15 years, in some character of employment not at or near their establishment where their dangerous machinery was used. It is the employment in and around dangerous machinery that is unlawful, and not the employment by a concern which might, in the course of its business, use a dangerous machinery distant from the place where the child is employed. What if appellee had been employed in a machine shop in the railroad yards repairing locomotives, assisting in moving them about the roundhouse, and doing other work of the same character? Would appellant be guilty of violating the statute?

"We think there is no escape from the proposition that the Legislature intended to include in this act every character of establishment where dangerous machinery was used; and since the words of general import, 'other establishments using dangerous machinery,' constitute an enlargement of the statute, they obviously did not intend, under a doubtful rule of construction, to exclude any character of an establishment where the lives of children were imperiled.

"If it be conceded, and we think it must, that the intention of the Legislature in the passage of this act was to protect the lives and health of the children of this state, then we think it must logically follow that a railroad, in places where, in carrying on its business, it uses dangerous machinery, is prohibited, within the meaning of this act, from employing children. If it were true that the maxim 'ejusdem generis' was a rule, ironclad in that it confined, with respect to the intent of the Legislature, words of general import to the class specifically enumerated, then appellant's contention and the court's opinion might be correct. But it is nowhere contended that the rule itself is other than a rule of construction employed as an aid in determining the intent of the Legislature, And if it be employed as a rule to defeat the intention of the Legislature, then the equitable reason for the rule no longer exists, and, the reason for the rule failing, the rule itself must fail. If it appear, upon the face of the statute, the intention of the Legislature, then there is no necessity of invoking any rule to aid in the proper construction of it.

"The intention of the Legislature being obvious from the whole statute, we need no rule of construction to interpret its provisions.

"But the court says that if the Legislature had intended to include railroads the Legislature would have named them. Why should they have named them? If it were necessary to name them in the statute to include them, then it follows that it was necessary to name them to exclude them.

"Why did the Legislature not say that the provisions of the act should not apply to railroads? The statute says, 'other establishments using dangerous machinery.' Why, if the Legislature intended that the act should not apply to railroads, did they not say, 'provided this act shall not apply to railroads'? There is no more reason to say that they must be named to bring them within the meaning of the above clause than to say they should be named to exclude them.

"We hardly deem it necessary to call the attention of this court to the fact that the Legislature has, in numerous instances, so often in fact that it has become a legislative practice acquired from experience and knowledge of the decisions of the courts of this state, negatively declared that which they do not wish to be incorporated within the meaning of a statute. Indeed, it is a practice so well understood that its omission would be a legislative anomaly.

"In the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) (and we mention this one only because of its prominence), it is specially provided by section 2 that the act shall not apply to railroads and several other characters of employment there mentioned. Why should the Legislature say that it should not apply to railroads if they did not want it understood expressly that they were legislating for that particular kind of business? The court is, of course, familiar with numerous other acts of the Legislature wherein they have expressly provided that certain things should not be affected by the provisions of the particular act.

"That the Legislature intended that article 1050 should apply to railroads, we think, is self-evident by the very nature and purpose of the act itself; hence to say that, under a technical rule of construction, they may be excluded from its provisions is, we think, violative of the real purpose and intent of the Legislature.

"The majority opinion does not attempt to cite any authorities to support the definition of 'establishment,' the simple holding being that a railroad operating a switching engine in a switching yard is not an establishment using dangerous machinery, as defined in the act referred to.

"If we look to the Revised Statutes, we find a rule laid down for the defining and interpretation of words and terms:

"'Article 5502. The following rules shall govern in the construction of all civil statutory enactments:

"'1. The ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade, or with reference to such subject matter. * * *

"'6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.'

"Our own courts have frequently held that the intent may be shown by the body of the act (Snyder v. Compton, 87 Tex. 374, 28 S. W. 1061), and that the courts are not bound by rules of grammar, and may disregard them to give the manifest legislative intent. W. P. Oil Co. v. State, 48 Tex. Civ. App. 162, 106 S. W. 918. That the spirit will control the strict letter if the legislative intent can be better gathered therefrom. Cannon v. Vaughan, 12 Tex. 399; Brooks v. Hicks, 20 Tex. 666; Simpson v. Brotherton, 62 Tex. 170. And the intention will prevail over the literal sense of the terms employed. Campbell v. Cook, 24 S. W. 977.

"In Edwards y. Morton, 92 Tex. 152, 46 S. W. 792, it was expressly held that the intention of the Legislature in enacting a law must be enforced, when ascertained, though not consistent with the strict letter of the statute.

"Courts, in the construction of statutes, are not confined to the literal meaning of the words employed, but the intention may be collected from the cause or necessity of the act. Oliver v. State, 65 Tex. Cr. R. 150, 144 S. W. 604. And when the intention of a statute is plainly discernable from its provisions, it is as obligatory as the letter of the statute, and will even prevail over the strict letetr. Oliver v. State, supra.

"When the words are not explicit, the intention is collected from the occasion and necessity of the law, and from the mischief and objects and remedy in view, and the intention is to be presumed according to what is consonant to reason and good discretion. Cannon v. Vaughan, 12 Tex. 399. Such even was the rule of construction in criminal cases; for greater reason, in civil cases. Croomes v. State, 40 Tex. Cr. R. 672, 51 S. W. 924, 53 S. W. 882. See, also, on the same subject, Hidalgo v. Davidson, 102 Tex. 539, 120 S. W. 849; Padgitt v. Railway, 104 Tex. 249, 136 S. W. 442.

"The Legislature is presumed to have used words in the sense in which they are ordinarily understood. Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262. A construction should not be adopted which would render the law absurd or meaningless, when a rational, expressive, and wholesome meaning may be ascertained. Texas & Pacific v. Taylor, 54 Tex. Civ. App. 419, 118 S. W. 1097.

"Keeping these principles in mind, let us consider the act itself:

"'Chapter 46.

"'An act to regulate the employment of children in factories, mills, mines, quarries, distilleries, breweries, manufacturing or other establishments using dangerous machinery, in manufactury of goods, for immoral purposes or when their health may be impaired or morals debased, or to send such child to any disorderly house, bawdy house, or house of assignation, or to permit such child to go to any such house, and to provide penalties for violation of same, and to declare an emergency.

"'Be it enacted by the Legislature of the state of Texas:

"'Section 1. Any person, or any agent, or any employee of any person, firm or corporation who shall hereafter employ any child under the age of fifteen years to labor in or about any manufacturing or other establishment using dangerous machinery, or about the machinery in any mill or factory, or in any distillery, brewery, or to labor in any capacity in the manufacture of goods for immoral purposes * * * shall be deemed guilty of a misdemeanor. * * *

"'Sec. 4. The fact that there is now no adequate law to prohibit the employment of children of tender age in the factories and other hazardous employments of this state, to the great injury of the children and of society generally, creates an emergency,' etc.

"It will thus be seen, by the title, that it is an act to regulate and prohibit the employment of children in factories, mills, mines, quarries, distilleries, breweries, manufacturing or other establishments using dangerous machinery.

"Employment in the first seven enumerated is prohibited, without regard to the class, kind, or character of machinery used; but, of the classes of employment not specifically enumerated, the act applies only if in the particular establishment dangerous machinery is used. In other words, employment absolutely and unconditionally is prohibited by the title, in factories, mills, mines, quarries, distilleries, and breweries; and by this title employment is also to be prohibited in all other establishments only if the dangerous machinery is used.

"But if we look to section 1, the prohibiting section specifically enacted, we find that such employment is prohibited only in any manufacturing or other establishment using dangerous machinery. And by section 4 the act creates the emergency, because there is no adequate law to prohibit the employment of children of tender years in factories and other hazardous employments.

"The evil sought to be remedied unquestionably was the employment of children in hazardous employments; and the greater the hazard, the greater the necessity for the legislation. If there is any business or establishment more dangerous than a railroad yard used for switching cars in the night time, the writer is not aware of it.

"The opinion of the court centers on the one proposition advanced therein, to wit, that the Legislature, by the use of the words 'other establishments using dangerous machinery,' did not mean such establishments as railroads, but meant such other establishments as are akin to the one specifically mentioned.

"To combat this we advance this proposition:

"(1) No specific establishment is mentioned; the term factory is a general one (manufacturing), and just as general as the word 'establishment.' Hence the Legislature intended to prohibit the employment of children, first in manufacturing establishments; and, second,

in any establishment using dangerous machinery.

"(2) That a railroad operating a yard where cars are switched by an engine is an establishment using dangerous machinery.

"We now have a common word of the English language to define and interpret, and by virtue of the statute we accept the common definition thereof. Though no authorities are cited in the opinion to support the interpretation given by the court, we do find one, to wit, Webster's Unabridged Dictionary:

" 'Establishment: The place in which one is permanently fixed for a residence or business.

" 'Equipment, etc., with which one is fitted out, also any other office or place of business with its fixtures, including grounds, and furniture.

" 'That which serves for the carrying on of a business.'

"Therefore the railroad yard was the 'establishment' of the defendant; it was the place in which it was permanently fixed for its business; it was its office or place of business, its grounds for that purpose; the place which served for the carrying on of its business. It operated dangerous machinery therein. In Texas & Pacific v. Barrett, 14 C. C. A. 373, 67 Fed. 214, it was expressly held that a locomotive was a dangerous machine. Opinions of Attorney General of Texas 1911.

"The Attorney General of Texas has construed the following act (Laws 1909, p. 61, § 11), which makes it a misdemeanor to hinder inspectors in inspecting various places of employment. The act is as follows:

" 'Any owner, manager, superintendent or other person in charge or control of any factory, mill, workshop, mine, store, business house, public or private work, or other establishment or place, where five (5) or more persons are employed at work, who shall refuse to allow any officer or employee of the said Bureau of Labor Statistics to enter the same, or to remain therein for such time as is reasonably necessary, or who shall hinder any such officer or employee, or in any way prevent or deter him from collecting information, shall be deemed guilty of a misdemeanor,' etc.

"The Attorney General says:

" 'While railroads are not in terms named in this act, it is broad enough to include them.' Opinion Attorney General of Texas 1912.

"The opinion of the court has sought to read into section 1 the title, by stating that employment of children about machinery in any mill or factory is prohibited, and applies the term 'other establishments' to such as mills and factories, which are referred to as specifically described and enumerated. We can hardly assent; for while the title is rather specific as to the first seven employments mentioned, the sections enacted do not refer to them specifically, the Legislature evidently preferring to prohibit the employment in general terms, and thus take no chance of not fully covering the subject. By the emergency clause, which was enacted, the purpose of the law is made plain; that is, to prohibit employment of children of tender years in factories and other hazardous employments; and to construe the law, as has been done by the opinion herein, we respectfully submit, would defeat the legislative intent and thwart the legislative will. There are

scores of employments in 'establishments using dangerous machinery' which are not 'factories,' nor are they any of the specific employments or establishments enumerated in the title or caption.

"And if there be doubt as to whether the defendant is an 'establishment,' within the meaning of the act, then unquestionably, from the emergency clause, the spirit of the law was to prohibit all hazardous employments, and the case falls fairly within the following:

" 'The spirit of the act will control the strict letter, if the legislative intent can be better gathered therefrom, and the intent will prevail over the literal sense of the terms employed.' Cannon v. Vaughan, 12 Tex. 399; Brooks v. Hicks, 20 Tex. 666; Simpson v. Brotherton, 62 Tex. 170; Campbell v. Cook, 24 S. W. 977.

" 'When the words used are not explicit, the intention is to be collected from the occasion and necessity of the law, and from the mischief and objects and remedy in view.' Cannon v. Vaughan, supra.

"If it be said that the case of Stirling v. Bettis Mfg. Co. is not authority in support of our proposition that the act of 1917 did not repeal the act of 1911, being chapter 46, Acts of the 32d Legislature, p. 75, in the sense that all acts done in violation of article 1050 were pardoned by subsequent repeal of the act on the ground that the determination of this question was not necessary to a decision in that case, we reply that the case of Culpepper v. I. & G. N. R. R. Co., 90 Tex. 627, 40 S. W. 386, was cited and approved by this court in that opinion.

"If the question has not been expressly decided in this state, it has in other states, and is discussed exhaustively in the case of James v. Oakland Traction Co., 10 Cal. App. 785, 103 Pac. 1082.

"To appreciate the opinion it must be read, and we can only quote such excerpts from it as are pertinent. The court will recall that California, in the Civil Code, has provisions of a similar character as has this state, contained in section 3 and section 6 of the final title of the Revised Civil Statutes with reference to the repeal of a statute not affecting or impairing any act done, or right vested or accrued, or any proceeding, suit, or prosecution had or commenced.

"The case of James v. Oakland Traction Company was an action by the plaintiff to recover damages for personal injuries alleged to have been inflicted upon the plaintiff through the negligence of the defendant. The plaintiff alleged that the street car on which he was riding was exceeding the speed limit within the corporate limits of the city, which was eight miles per hour; the Legislature of that state having provided the rate of fare on cars, and the rate of speed that they were permitted to travel. The Legislature of the state subsequently repealed that law eliminating the provision with reference to speed, and it was contended by defendant that, the act having been repealed, the court erred in the submission of the question of whether or not defendant was violating that act since it has been repealed.

"The court says: 'Clearly, we think, the provision of section 501 of the Civil Code, fixing the maximum rate of speed of street cars when traveling over the streets of a city, is more

than a rule of evidence. It is a rule of property, for a vested right is property, whatever may be the nature or condition of the object of such right; that is to say, that "a vested right of action is 'property' in the same sense in which tangible things are property, and is equally protected against arbitrary interference." Cooley's Const. Lim. (4th Ed.) p. 449. Of course, a distinction is to be observed between the right of action and the remedy; for the right to a particular remedy is not a vested right, unless the destruction of the remedy necessarily operates to destroy the right of action, in which case an act abrogating the remedy could not, obviously, have a retroactive effect.' 'It would be extending this opinion to an unnecessary length,' says the court, quoting from Williams v. Johnson, 30 Md. 500, 96 Am. Dec. 616, 'to review in detail the authorities relied upon by the counsel for the appellee. It is sufficient to say that upon examination they will be found to be cases arising upon penal statutes, where it was held that the action was defeated by the repeal of the law; or where a statute conferring an executory right was repealed before the right became executed; or where it was held that the remedy, procedure, and even the statute of limitation, may be changed or modified without impairing the right of action or the obligation of the contract. But no case can be found in which it has been held that a right of action, founded upon the municipal law of a country, is defeated by change or abrogation of the law.'

"Again the court says, quoting from Hope Mutual Insurance Co. v. Flynn, 38 Mo. 483, 90 Am. Dec. 440: 'It is not within the constitutional competency of the Legislature to annul by statute any legal ground on which a previous action is founded, or to create a new bar by which said action may be defeated.'

"Quoting from Dash v. Van Kleeck, 7 Johns. (N. Y.) 477, 5 Am. Dec. 306: 'The very essence of a new law is a rule for future cases. The construction here contended for on the part of the defendant would make the statute operate unjustly. It would make it defeat a suit already commenced upon a right already vested. This would be punishing an innocent party with costs, as well as divesting him of a right previously acquired under the existing law. Nothing could be more alarming than such a subversion of principles.' Citing Bailey v. P. W. & B. R. R. Co., 4 Har. (Del.) 399, 44 Am. Dec. 593; Terrill v. Rankin, 2 Bush (Ky.) 453, 92 Am. Dec. 500; Creighton v. Pragg, 21 Cal. 115; Pacific M. S. Co. v. Joliffe, 2 Wall, 450, 17 L. Ed. 805; Vanderker v. Rensselaer, etc., Ry. Co., 13 Barb. (N. Y.) 393; Taylor v. Woodward, 10 Cal. 90.

"Again the court says: 'We shall not review these cases, for it is enough to say that they are not in point here because they involve actions deriving the authority for their institution and maintenance entirely from the statute itself, as, for instance, actions for recovery of statutory penalties and the like. * * * With this declaration we can find no fault; but, as we have already said, the action here is not for the enforcement of or recovery upon a right "created solely by statute and dependent upon the statute alone." It is a right which existed, we may say at the expense of repetition,

independently of the statute, which went no further than to prescribe a condition constituting an additional element entering into the contract out of which the right of action arose. It will not be questioned, we apprehend, that the principles herein discussed are applicable alike to cases of tort or actions arising ex delicto, as well as to those sounding in contract. This proposition is so well settled that we shall content ourselves with the mere mention of some of the innumerable authorities establishing and confirming it.' Chalmers v. Sheehy, 132 Cal. 465, 64 Pac. 709, 84 Am. St. Rep. 62; Melvin v. State, 121 Cal. 24–26, 53 Pac. 416; Hunsinger v. Hofer, 110 Ind. 390, 11 N. E. 463; Cooke v. Cooke, 43 Md. 522; Miner v. Warner, 2 Grant Cas. (Pa.) 448; Martin v. Walker, 12 Hun. (N. Y.) 46; Weir v. Day, 57 Iowa, 84, 10 N. W. 304."

In my judgment the motion for rehearing should have been granted, and the trial court's judgment affirmed.