THE ATTORNEY GENERAL
OF TEXAS
PRICE DANIEL
ATTORNEY GENERAL



January 21, 1948

Hon. M. B. Morgan
Commissioner
Bureau of Labor Statistics
Austin, Texas

Opinion No. V-478

Re: Rule-making power of
the Labor Commissioner
under the Health, Safe-
ty and Morals Act (V.C.S.
Art. 1573-80; P.C. Art.
1567-68;) and whether
the term "oil and gas
fields" as used by the
44th Leg., 1935, R. S.
Ch. 245, p. 168, refers
to a geographical area
or to the oil and gas
petroleum industry

Dear Mr. Morgan:

You state that it is the desire of the Bureau
of Labor Statistics to adopt a code of safety and health
standards applicable to Health, Safety and Moral Laws of
this State.

The Health, Safety and Morals Law of Texas was
enacted by the 35th Legislature, 1918, Fourth Called Ses-
sion, Chapter 58, page 132, and codified in the Revised
Civil Statutes of 1925 as Articles 1573-1580, inclusive,
and Penal Code, 1925, Articles 1567-1568.

Succinctly, Articles 1573-1580 provide that in
every factory, mill, workshop, mercantile establishment,
laundry or other establishment in this State, proper tem-
perature and ventilation for the protection of health of
employees shall be maintained. It requires the removal
of gas or effluvia, or odors from places where the em-
ployees are required to work and directs that dust in-
jurious to the health of the persons employed be allay-
ed; it prohibits decomposed or putrescent matter or re-
fuse of any kind to be allowed to remain in or around
such place of employment; it provides for the cleaning,

sweeping, and dusting outside of working hours as far as possible; requires doors used by the employees as entrances or exits to open outward; it describes the number of water closets, earth closets, or privies to be supplied and requires separate closets or privies for males and females, and requires them to be kept clean and effectively disinfected and ventilated; and it forbids in such places of employment the existence of any influence, practices, or conditions calculated to injuriously affect the morals of female employees. The law authorizes the Commissioner of Labor Statistics or his deputies or inspectors to enter such places of employment for making inspection to determine that the provisions of the Act are being complied with, and empowers the department to issue an order for the correction of unlawful conditions. In case of a failure or refusal to comply on the part of the owner or manager or the person in control of such place of employment, the Commissioner of Labor Statistics, his deputies, or inspectors, are empowered to close such establishment or any part of it, until such time as said orders are complied with. The Act states how such powers may be exercised and provides a method for testing the validity of such orders. Penal Code, 1925, Article 1567-1568 fixes the penalty for permitting immoral influences on female employees and for failure or refusal to comply with proper orders of the Commissioner of Labor Statistics or his deputies or inspectors.

Your questions are as follows:

"Pursuant to the duties imposed by law upon the Bureau of Labor Statistics, it is the desire of this Bureau to develop a code of safety and health standards to be printed and issued in the form of a general order applicable to the industrial establishments enumerated in Articles 1567-8, P.C. of the Health, Safety and Morals Law. We therefore respectfully request the Attorney General's opinion bearing on the extent and limitations of powers imposed upon the Commissioner of Labor by the above-mentioned articles, and by other laws cited herein.

"Question 1. In addition to the provisions of Art. 1568, P.C. imposing authority upon the Labor Commissioner to issue orders correcting within the establishments arduous

conditions described in Articles 5173, R.-C.S., thru 5180, R.C.S., of the Health, Safety and Morals Law. May it not be inferred from the language of said Art. 1568, P. C., that it was also the Legislature's intention or command that similar corrective and preventive powers be exercised by the Commissioner in dealing with any additional conditions he may deem detrimental to the safety and health of the employees of all such establishments? That part of Art. 1568, P.C. wherein this inquirer draws such inference is here quoted with single and double underscorings added to place the appropriate degree of emphasis on key words of the expression: 'Any person . . . who shall fail or refuse to comply with <u>any written order</u> issued to such person by the Commissioner of Labor Statistics, or any of his deputies, or inspectors, for the correction of <u>any condition caused or permitted therein which endangers the health of the employees therein</u> or which do not comply with the laws governing such establishments shall be punished as provided in the preceding article.'

"Question 2. By authority granted the Commissioner of Labor by the above-named articles would it be permissible for the Commissioner to develop and adopt standards of safe and healthful working conditions to be incorporated in one written or printed general order applicable to all establishments whose operations and processes bear common or like hazards detrimental to the physical safety and health of the employees of such establishments?

"Question 3. H.B. No. 455, Chapter 245, 44th Legislature - Regular Session, 'Taxing Petroleum Products and Appropriating Proceeds Therefrom to Enforce Conservation Law,' Section 4, and Section 7 which reads in part as follows:

"'There is hereby appropriated out of the funds accruing from the Oil and Gas Enforcement Fund hereinbefore provided the amount of Three Thousand One Hundred Fifty

Dollars ($3,150) for the purpose of paying
salaries of Deputy Commissioners of Labor
Statistics to enforce labor laws in the oil
and gas fields.' In order that the Commis-
sioner of Labor may efficiently discharge
the duties imposed upon his office by the
above-quoted law an opinion of the Attorney
General is hereby requested interpreting the
Legislative intent in its use of the terms
'oil and gas fields' as used in the first
sentence of sec. 7 of the above-quoted law.
Is this Bureau limited in its activities to
the specific geographical area commonly re-
ferred to by name as a particular oil and/or
gas field or was it the Legislature's inten-
tion that the term 'oil and gas field' embrace
the oil and gas industry (or as is more com-
monly expressed 'petroleum industry') in its
entirety, and with the possible intended in-
clusion of the industry's equipment manufac-
turers and dealers as well?"

The enforcement of these regulatory statutes
is entrusted to the Labor Department; and sole reliance
for their enforcement is not upon criminal sanction.
This was because of the complex character of the prob-
lem which this regulatory legislation seeks to deal with.
And as a wise and intelligent enforcement was sought, a
single department of government, the Labor Department,
was specially charged to take over and perform those
preliminary phases of the enforcement of the statutes,
preparatory to its ultimate enforcement in the Court
when necessary. Your work, in other words, is to main-
tain contacts with the special industry or activity reg-
ulated and to make investigations, sifting complaints,
to make preliminary determinations in instances in which
possible violations are found or charged, and then to
prepare and "give written notice of the facts to the
proper County or District Attorney." Article 5149, R.-
C.S. The relative complexity of the issues with which
your department has to deal, and the detailed investi-
gation of facts, which you are of necessity required to
make before determining that a law has been violated,
makes it practically imperative for you to conduct hear-
ings "and take testimony in all matters relating to the
duties required of you." Article 5150, R.C.S., and P.C.
1562.

You are also charged with the duty "of examin-
ing into the methods of protecting employees from danger

and sanitary conditions in and around . . . any factory, mill, workshop, mine, store, business house, public or private work, or other establishment or place where five or more persons are employed." Art. 5148, R.C.S., and Art. 1565, P.C. The owner, manager, and superintendent of such enumerated establishments are required to co-operate with your department. Art. 1563 and 1566, P. C.

It will be helpful at this point to cite the following legal quotations:

In Galveston, H. & H. Ry. v. Anderson (Civ. App.), 229 S.W. 998, the Court said:

> "Where an enumeration of specific things is followed by some general word or phrase, such general word or phrase is to be held to refer to things of the same kind as those specifically mentioned."

Speaking of the above rule, the author of the article Statutes, 39 Texas Jurisprudence, page 202, par. 109, said:

> "The doctrine of ejusdem generis (of the same kind) imports that general words following an enumeration of particular or specific things, will be confined to things of the same kind. In brief, the general words so used are not to be construed in their widest sense, but are to be held as applying only to persons or things of the same kind and class as those enumerated. Such words will not be held to include things of a class superior to that to which the particular words belong.
>
> "The ejusdem generis doctrine is a general or 'prima' rule of statutory construction, employed as an aid in determining the intention of the Legislature."

Under the doctrine of "ejusdem generis", broad and comprehensive expressions in an Act, such as "and all other", or "any others", are to be restricted to persons or things of the same kind or class with those specifically named in the preceding words. City of Lexington v. Eggerton (Ky.) 159 S.W. (2d) 1015, 1017. Generally, words "other" or "any other" following enumeration of particular classes of things in the statutes must be read as meaning

"other such like" and include only words of the like kind or character. Bigger v. Unemployment Compensation Commission (Del.) 46A (2d) 137. Johnson v. Bear (Mo.) 40 S.W. (2d) 481, 485.

In Associated Indemnity Corporation v. Wilson, 21 S.W. (2d) 314, it was held that a dairy, its equipment including churns, pasteurizers, cows, barns, paint shops, blacksmith shop, and ice factory, did not come within the purview of the Child Labor Law, P.C. 1925, Art. 1573, which prohibited a child from being employed to labor in or about a factory or workshop.

Penal Code, 1925, Article 1568, is as follows:

"Any person in control or management of any establishment included in the preceding article who shall fail or refuse to comply with any written order issued to such person by the Commissioner of Labor Statistics, or any of his deputies or inspectors, for the correction of any condition caused or permitted therein which endangers the health of the employees therein or which do not comply with the law governing such establishments, shall be punished as provided in the preceding article." (Emphasis added)

Article 1568, P.C., makes it an offense for one to fail or refuse to comply with any written order issued to such person for the correction of any conditions caused or permitted therein which endanger the health of the employees therein. This Article, P.C. 1568, means any authorized written order and must necessarily be read in conjunction with Art. 5179, R.C.S.

This statute does not vest in the Labor Commissioner general rule-making authority. The only power he has in this respect is to issue written orders to places of business, after inspection, directing the correction of conditions violative of the law. A general order or rule addressed indiscriminately to all places of business would not be the proper basis for the enforcement of the Act by closing such places or by criminal prosecution. R.S. Art. 5179, P.C. 1567, 1568.

But you are, in our opinion, authorized to promulgate suggested standards to assist those covered to establish conditions at their plants and businesses

which will be helpful in meeting the general standards prescribed by the Act. However, such interpretations and standards cannot be the basis of the enforcement of the Act. Public Administrative Law, 42 Am. Jur. 392, #77; Utah Hotel Co. v. Industrial Commission (Utah), 151 P (2d) 467, 470, 153 A.L.R. 1176, 1180; Williams v. State (Tex. Cr. App.) 176 S.W. (2d) 177.

The phrase "any written order" used in the Act under consideration (Art. 1568 P.C.) refers to written orders made after inspection of the premises pursuant to the general authority granted under the Act. It does not expand the powers of the Commissioner beyond the powers granted in the Act. The same is true of orders dealing with conditions "endangering the health of the employees." Only orders dealing with the unsanitary conditions mentioned in the Act would be of force and effect. The Commissioner is not authorized to issue orders dealing with all conditions which he believes "endanger the health of the employees."

As to your third question, the 44th Legislature, Acts 1935, Regular Session, Chapter 245, page 618, recognized the importance of the work done by the Department, by providing for additional revenues so that you could more efficiently "enforce labor laws in the oil and gas fields."

Oil fields are usually developed in rural areas where labor laws play a very small part. But with the development of oil and the increased population incident thereto, the safety, health, and morals of the community require an efficient enforcement of the labor laws. This can only be done by an increased staff. The purpose of this enactment is to furnish the increased personnel to better enforce the labor laws entrusted to your Department, such as the Child Labor Law, the Semi-Monthly Pay Day Law, the Employment and Agency Law, the 9-54 Hour Law for Women, the Semi-Monthly Payment Wage Law and Public Work, Protection of Workmen on Buildings and other laws entrusted to your Department for enforcement. It does not mean merely the petroleum industry. It covers the petroleum industry only insofar as that industry like others comes within the purview of the statutes entrusted to you for enforcement. Such a view is inescapable by a reading of Section 7 of the 1935 Act, which provides as follows:

"Sec. 7. There is hereby appropriated out of the funds accruing from the Oil and Gas Enforcement Fund hereinbefore provided the amount of Three Thousand One Hundred Fifty Dollars ($3,150) for the purpose of paying salaries of Deputy Commissioners of Labor Statistics to enforce labor laws in the oil and gas fields."

The Legislature did not intend for the words "oil and gas fields" to embrace the oil and gas or petroleum industry. It simply meant that the laws affecting the working people of this State be enforced in those areas and localities where oil and gas are produced.

## SUMMARY

The Commissioner of the Bureau of Labor Statistics does not have general rule-making power under the Health, Safety, and Morals Act (Art. 1573-80 V.C.S. Art. 1567, 1568 P.C.). He may, however, issue interpretations and suggested standards to assist businesses covered by the Act to establish conditions which more nearly meet the general standards of the Act.

The term "oil and gas fields" as used in the 1935 Acts, 44th Leg., Reg. Sess., Ch. 245, page 618, appropriating additional monies to "enforce labor laws in the oil and gas fields" refers to the geographic localities where such products are produced, and not to the petroleum industry, as a whole.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED:

ACTING ATTORNEY GENERAL

DW/jmc/mw/lh/JCP

By     David Wuntch
       Assistant